7]          JANUARY TERM, 1902.          637

Nehrling v. State ex'rel. Thal, 112 Wis. 637.

NEHRLING, Appellant, vs. THE STATE EX REL. THAL, Re-
spondent.

*December 19, 1901 — January 7, 1902.*

Certiorari: *Return: Sufficiency: Conclusiveness: Officers: Removal by
public board: Absence of member during investigation: Witnesses:
Oath, when necessary: Cause for removal: "Misdemeanor."*

1. On *certiorari* to review the action of a public board a supplemental
   return was made in response to an order of the court and in pur-
   suance of a resolution of the board directing the president "to
   sign said return for and in behalf of said board, and to cause said
   return to be duly and forthwith filed," etc.  There being no claim
   that the return was a forgery or was not made by direction of a
   majority of the board, it is *held* that evidence *aliunde* was inad-
   missible to show that it was not in fact the return of the board.
2. On *certiorari* to review the action of the trustees of the Milwaukee
   public museum in removing the custodian, the return showed the
   adoption, by a two-thirds vote, of a resolution that "the evidence
   sustains the charges so far as to prove misconduct, incompetency,
   and inattention to the duties of his office on the part of the custo-
   dian."  The return also showed the result of the vote upon each
   of the several charges, although such votes did not appear in the
   records of the board, and stated that the resolution was adopted
   and the votes taken in secret session; that one of the trustees
   was the secretary and kept pencil memoranda showing the result
   of the vote on each charge; and that he prepared therefrom the
   record of such session as it was recorded in the record book of
   the board, believing that only the conclusions of the board were
   necessary, and destroyed the memoranda before the *certiorari*
   proceedings were commenced.  The law did not require the board
   to keep a record of its proceedings.  *Held,* that the return was not
   incomplete because of the absence of said memoranda, but was
   binding upon the relator, and could not be shown to be incorrect
   by affidavits of the minority of the trustees.
3. Where in such a case the custodian might be removed by the
   trustees for cause, absence of one of the nine trustees during a
   portion of the investigation of charges upon which a removal was
   based does not invalidate such removal.

4. Witnesses who appeared before the trustees on the investigation of charges against the custodian need not be sworn, there being no statute requiring it.

5. Findings by the board of trustees that the custodian had been guilty of official misconduct toward the assistant custodian, that he had purchased books for his own personal use which were charged to the museum, and that he had presented to the finance committee and by deceit procured the allowance of a bill for freight on books, a large part of which belonged to him personally — are *held* sufficient to justify his removal under sec. 7, ch. 328, Laws of 1882, authorizing the trustees to remove the custodian "for misdemeanor, incompetency or inattention to the duties of his office."

APPEAL from a judgment of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Affirmed.*

Several years ago, in pursuance of ch. 328, Laws of 1882, a public museum was established in Milwaukee. By the terms of the act such museum was to be "under the general management, control, and supervision of a board of nine trustees," to be appointed as therein prescribed, who should be styled "The Board of Trustees of the Public Museum of the City of Milwaukee." Such trustees were to take an official oath, and be subject to the restrictions, disabilities, punishments, and limitations therein prescribed, and were to have the general care, control, and supervision of the museum and its appurtenances and also the disbursements of all moneys belonging to the museum fund. They were to appoint a custodian, who should be *ex officio* secretary of the board, with power of removal for cause, and were to have the power to appoint such assistants and employees as they should deem necessary and expedient, and to fill all vacancies. Under such authority the board duly elected the appellant, *Henry Nehrling*, such custodian, May 15, 1898, for the term of five years. Subsequently *Nehrling* got into a bitter personal controversy with his assistant custodian, *Carl Thal*, in regard to their respective duties. On January 2, 1901, the latter made six several charges against *Nehr-*

*ling*, as such custodian, and requested an investigation as to the truth of such charges. Such six charges so made are as follows:

"(1) *Mr. Nehrling* has pursued a long course of ill-treatment toward myself, has undermined and belittled my position and authority, has caused various persons to spy upon me, and has commonly treated me with contumely and contempt, and has directed that the museum mail should not be turned over to me, even in his absence. (2) In 1899, certain books were purchased by *Mr. Nehrling* from foreign book dealers, and were charged to the museum, when the purchase of said books had never been authorized by the board of trustees, and said books were in fact purchased by said *Nehrling* for his personal use. (3) During 1897, *Mr. Nehrling* instructed me to pick out three or four of the best antlers from the Haysen collection, and to have them wrapped up, which I did, whereupon *Mr. Nehrling* had them taken from the museum, saying he wanted to send them to a friend in the South. (4) In September, 1898, *Mr. Nehrling* received two dollars and forty cents ( $2.40 ) from Steinmeyer & Company, which should have been paid over to the city treasury, but which *Mr. Nehrling* retained and still retains. (5) In May, 1898, *Mr. Nehrling* presented to the finance committee a bill for payment of ten dollars and eleven cents ( $10.11 ), for freight and other charges from New York to Milwaukee on six hundred sixty ( 660 ) pounds of books. Six hundred twenty-four ( 624 ) pounds of these books were for *Mr. Nehrling* personally, and only thirty-six ( 36 ) pounds for the museum. The finance committee, and the board, deceived by *Mr. Nehrling* in the matter, signed and allowed the bill. (6) In June, 1898, *Mr. Nehrling* placed before the finance committee a bill for eleven dollars and thirty-five cents ( $11.35 ) freight from London to New York, on six hundred sixty ( 660 ) pounds of books, six hundred twenty-four ( 624 ) pounds of which were for *Mr. Nehrling* personally, and only thirty-six ( 36 ) pounds for the museum. The finance committee and the board, being deceived by *Mr. Nehrling*, signed and allowed the bill."

On January 10, 1901, *Nehrling* answered to the effect that he denied each and every charge so made against him; that the first charge was too general and should be made more

definite and certain; that he was ready to proceed with the hearing, and demanded that he should be allowed to be represented by counsel, and that the proceedings be fully taken down by a competent phonographic reporter; that the charges were not sworn to, and should be verified. January 15, 1901, *Carl Thal* made amended charges, duly verified, to the effect that, while it was impracticable to fully describe in detail the long course of ill-treatment pursued by *Nehrling* toward himself, yet in relation to the first charge he alleged that *Nehrling* frequently charged him with having secrets with various parties and upbraided him with keeping matters from him which he *Nehrling* ought to know, notwithstanding that he was frequently assured that no such secrets existed; that *Nehrling* found fault with him merely because the former custodian and a former trustee called upon him at the office; that, without any reason or excuse, *Nehrling*, for a considerable length of time, refused to speak to him at all, and had absolutely ignored his presence in the room in a way more offensive than easily described; that *Nehrling* had for years said unpleasant and cutting things — that he (*Thal*) had many enemies, that *Nehrling's* friends had told *Nehrling* to watch him, that he was not to be trusted; that when he told *Nehrling* to bring such persons to the office, to make such statements in his presence, he failed to do so; that *Nehrling* accused him of wanting to get his position from him, and *Nehrling* even went so far as to shake his fist in his face and use insulting and abusive language.

After a hearing and trial of such issues lasting for several days, conducted by counsel on each side, the said board, on January 29, 1901, by a vote of six trustees against three trustees, adopted the following resolution:

"The board, having heard the evidence upon the charges preferred against *Henry Nehrling*, custodian of the Public Museum, is of the opinion that the evidence sustains the

charges so far as to prove the misconduct, incompetency, and inattention to the duties of his office on the part of the custodian, *Henry Nehrling*, and the · assistant custodian, *Carl Thal;* that they and both of them ought to be and hereby are removed from their said offices, respectively, from and after March 1, 1901."

On February 20, 1901, *Nehrling* filed in the circuit court his petition for a writ of *certiorari*, to review such action of the board. On February 21, 1901, the court ordered the same to issue, and the same was thereupon issued. On February 27, 1901, the board made return to the writ. On April 9, 1901, the board, in pursuance of an order of the court, adopted and approved its former return, and made an additional return, as directed by the court. On June 13, 1901, the board, in pursuance of an order of the court made June 10, 1901, adopted and approved such return, and made further and additional return, as directed by the court.

It appears from the returns so made, in addition to the facts stated, in effect, that the first charge was considered separately and by itself, and *Henry Nehrling* was thereunder found guilty of official misconduct toward *Carl Thal*, and both he and *Thal* were censured therefor; that six of the trustees voted that he was guilty, and three to the contrary; that thereupon the second charge so made was considered by the board, and *Nehrling* was by the board found guilty under said charge by a vote of six trustees to three; that thereupon the board considered the third charge so made, and found *Nehrling* not guilty thereunder; that thereupon the board considered the fourth charge so made, and found thereunder that both *Nehring* and *Thal* were at fault, and the board censured both of them thereunder, by a vote of six to three; that thereupon the board considered the fifth charge so made, and found *Nehrling* guilty thereunder as therein charged, by a vote of six to three; that the board thereupon considered the sixth charge so made, but were unable to agree to a specific finding thereunder; that one of the

trustees, and the secretary of the board, kept pencil memoranda and minutes of the proceedings and action of the board, showing each of such several votes taken upon each of such charges; that after such action and the failure to agree on the sixth charge so made, the board, in executive session, adopted the resolution of January 29, 1901, in the manner and form and by the vote stated; that thereupon the secretary of the board prepared from such pencil memoranda the record of such executive session, as stated, and as the same is found recorded in the record book of the board, believing that only the conclusions of the board and not the intermediate proceedings of the board required to be recorded; that thereupon the secretary destroyed such pencil memoranda, as of no further use or consequence, but without any intention on the part of the board of suppressing or concealing any of the facts or any of such proceedings; that such proceedings so returned are the only proceedings had by the board.

Upon the return and amended return and second amended return so made, the trial court, on June 29, 1901, ordered that the action, findings, and decision of the board of trustees of the Public Museum of the city of Milwaukee in removing *Henry Nehrling* from his office of custodian of said Public Museum be and the same was thereby affirmed; that each and every stay of proceedings therein be, and the same were, thereby dissolved and discharged; and judgment was thereby ordered to be rendered and entered in accordance with such findings and order, and for costs against *Nehrling*, to be taxed therein.

From the judgment so entered *Henry Nehrling* appeals.

For the appellant there was a brief by *Ernest Bruncken* and *Bohmrich, Maher & Willrich*, and oral argument by *Mr. Bruncken* and *Mr. L. G. Bohmrich*.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

CASSODAY, C. J.   As indicated in the statement of facts, the board not only made return to the writ, but two supplemental returns.

1. Error is assigned because the court refused to receive evidence to show that the second supplemental return was not in fact the return of the board.  It was made in response to an order of the court, and under and in pursuance of a resolution of the board, adopted at a special meeting thereof called for that purpose, authorizing and directing the president of the board " to sign said return for and in behalf of said board, and to cause said return to be duly and forthwith filed in said circuit court for Milwaukee county; " and the same was so signed, as follows: " The Board of Trustees of the Public Museum of Milwaukee, by E. W. Windfelder, President of Said Board."   There is no pretense that such return was a forgery, nor that it was not made by the authority and direction of six of the nine members of the board.

Moreover, counsel contend that the return made was incomplete, in that the " pencil memoranda " kept by the secretary, showing each of the several votes of the members of the board upon each of such several charges, had been destroyed by the secretary, and that, as there was a conflict between the affidavits of the three dissenting trustees and the return, as to the result of some of such votes, neither could supply the record itself, and hence that the court improperly accepted and acted upon the return as made.  " The return must consist," say counsel, " exclusively of the record before the tribunal below, and no missing link can be supplied by the recollection of the lower tribunal or the affidavits of other persons."   In support of the proposition, counsel cite cases where the tribunal below was required by statute to keep records.  *Cassidy v. Millerick*, 52 Wis. 379, followed in later cases (*Fulton v. State ex rel. Meiners*, 103 Wis. 241, and cases there cited).  The act of the legislature under which the Public Museum in question was established

and is maintained does not require the keeping of records. Ch. 328, Laws of 1882. But the rule is elementary, as stated by Mr. Greenleaf, that, " If the record is lost, . . . its contents may be proved, like any other document, by any secondary evidence, where the case does not, from its nature, disclose the existence of other and better evidence." 1 Greenl. Ev. § 509. Here the return shows that before destroying such " pencil memoranda " the secretary prepared therefrom the record of the executive session at which such votes were taken, and recorded the same in the record book of the board, the same as reported to the court, believing " that the conclusion only of the board was necessary to appear upon the records," and hence that such pencil memoranda were of no further use or consequence; and, so believing, they were destroyed long before any proceeding had been taken in court and without any intention of suppressing or concealing any of the facts. In harmony with numerous adjudications of this court, we must hold that the return of the board was responsive to the writ of *certiorari* and conclusive upon the relator; and there was no error in refusing to require a further return. *State ex rel. Gray v. Common Council,* 104 Wis. 622; *State ex rel. Heller v. Fuldner,* 109 Wis. 56.

2. It is urged that the return should be disregarded, for the reason that one of the trustees was absent for a short time on two occasions during the trial or investigation. The contention is without foundation. This is settled by numerous adjudications of this court, and in fact by statute. Subd. 3, sec. 4971, Stats. 1898. *Melms v. Pfister,* 59 Wis. 196, and numerous cases there cited; *In re Luscombe's Will,* 109 Wis. 194, 197.

3. It is urged that the return should be disregarded, because none of the witnesses on either side was sworn. In support of such contention, counsel cite cases in courts of law or tribunals before which witnesses were required to be sworn.

In a case cited by both parties it was held by this court at an early day, in effect, that where no oath is required by statute the taking of an oath would be "extrajudicial and no indictment for perjury would lie upon it, however clearly it might be proven" that the person taking such oath had acted corruptly. *Lumsden v. Milwaukee*, 8 Wis. 494; *State ex rel. Andrews v. Oshkosh*, 84 Wis. 565.. The act of the legislature in question required the trustees to take an "official oath," and expressly authorized them to remove the custodian "from office for misdemeanor, incompetency or inattention to the duties of his office." Secs. 3, 7, ch. 328, Laws of 1882. But the act nowhere requires or suggests that any witness shall be produced, much less sworn and examined, in the investigation resulting in such removal. The act seems to contemplate a summary investigation by the trustees,— of course giving such official an opportunity to be heard. As stated by Mr. Justice WINSLOW in a case cited by the appellant's counsel:

"The power to remove officers for cause, though to be exercised in a judicial manner, is administrative, not judicial. It is a part of the power of the corporation, which is very useful, in fact almost necessary, for the efficient performance of the corporate duties. In this state the exercise of the power by similar bodies does not seem to have been questioned until now, though the cases have been quite numerous." *State ex rel. Starkweather v. Common Council of Superior*, 90 Wis. 619.

Sufficient authority is there cited in support of such statements. See, also, *State ex rel. Moreland v. Whitford*, 54 Wis. 150; *State ex rel. Sch. Dist. v. Thayer*, 74 Wis. 48; *State ex rel. Heller v. Lawler*, 103 Wis. 460; 2 Bailey, Jurisdiction, §§ 433 *et seq.*

4. The question recurs whether, upon the facts so returned, the board was justified in removing the appellant from the office of custodian. The act in question prescribes the du-

ties of the board, as indicated in the statement of facts, and also provides:

" The custodian elected under this act may be removed from office for misdemeanor, incompetency or inattention to the duties of his office, by a vote of two thirds of the board of trustees; the assistants and other employees may be removed by the board for incompetency or for any other cause." Sec. 7, ch. 328, Laws of 1882.

The returns show that the appellant was acquitted of the third charge, and that the board was unable to agree to a specific finding as to the sixth charge. The returns further show that " by a vote of two thirds of the board of trustees " the appellant was found guilty of the first, second, fourth, and fifth charges, respectively. As to the first charge, he was simply found guilty of official misconduct toward *Carl Thal*, and censured therefor. As to the fourth charge, he was found to be at fault, and censured therefor. Upon the second charge it was found, in effect, that in 1899 he purchased certain books from foreign book dealers, never authorized by the board of trustees, and which were in fact purchased by him for his personal use, but were charged to the museum. Under the fifth charge it was found, in effect, that in May, 1898, he presented to the finance committee of the museum a bill for the payment of $10.11 freight and other charges from New York to Milwaukee on 660 pounds of books, all of which except thirty-six pounds were for himself personally, and that the finance committee and the board, being deceived by *Nehrling* in the matter, signed and allowed the bill. The board thereupon held that the evidence sustained " the charges so far as to prove the misconduct, incompetency, and inattention to the duties of his office," and hence removed him from the office of custodian. Counsel contend that *Nehrling* was not found guilty of a misdemeanor. But, as indicated, he is, in effect, found guilty of obtaining money from the museum by false pre-

tenses and deceit and in violation of his duties and with intent to defraud. Such misconduct may fairly be regarded a misdemeanor. Secs. 4423, 3294, Stats. 1898. "Incompetency" includes a lack of moral qualities, as well as intellectual,— a lack of fitness for the duties of the office. That is covered by the two findings last mentioned, and also by the finding on the first charge. It appears from such findings and the judgment of the board that *Mr. Nehrling* did not properly attend to the duties of his office as such custodian, and was properly removed.

*By the Court.*— The judgment of the circuit court is affirmed.