## MONTAGUE v. STORROW et al.

(Circuit Court of Appeals, Seventh Circuit. April 23, 1923. Rehearing Denied June 8, 1923.)

### No. 3147.

1. **Principal and agent** &⊲⊃103(7)—Third person held not authorized to sell stock owned by estate.

A request by one of the executors of an estate to a third person to ascertain, by talking to some bond salesman, if he might run across some one interested in a stock owned by the estate, did not authorize such person to contract on behalf of the executors for sale of the stock.

2. **Executors and administrators** &⊲⊃96—Contract for sale of stock owned by estate held without authority from executors.

Plaintiffs, stockbrokers, alleged that defendant B. authorized them to sell certain stock owned by an estate, of which B. was not an executor. This B. denied, and he was without authority to make such contract. This transaction, if it occurred, was not known to the executors, who had not procured requisite authority from the court to sell the stock. Plaintiffs sold the stock and demanded it from B., who then communicated with another defendant, who was one of the executors, and she authorized him to tell plaintiffs that their attorney said he would obtain an order of court for transfer of the stock; but this was not done. *Held*, that such action by the executrix did not bind her personally, nor was it a ratification by the executors, especially in view of St. Wis. 1917, § 4971, subd. 3, which requires concurrence of a majority of executors to bind the estate.

In Error to the District Court of the United States for the Western District of Wisconsin.

Action at law by James J. Storrow and others against Winifred Montague and others. Judgment for plaintiffs against defendant Montague, and she brings error. Reversed.

Geo. W. Bunge and Frank Winter, both of La Crosse, Wis., for plaintiff in error.

Geo. H. Gordon, of La Crosse, Wis., for defendants in error.

Before BAKER and PAGE, Circuit Judges, and CLIFFE, District Judge.

---

&⊲⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

PAGE, Circuit Judge. The sole cause of action alleged against defendants personally is: "That on the 9th day of March, 1920, the defendants employed the plaintiffs to sell and dispose of for them, at the price of ninety ($90) dollars per share, 551 shares of stock of the Union Bag and Paper Company;" that after sale of said stock by plaintiffs, and notice thereof to defendants, defendants failed to deliver the stock, and plaintiffs were "obliged, in order to keep their contract of sale of said stock good, to go into the open market and purchase, and did purchase," a like amount of the stock sold. Judgment was asked and had against Winifred Montague, only, for commissions for the sale of the stock and the difference between the sale price and the price paid for purchases in the open market. At the close of the evidence, she moved for a directed verdict, assigned error on its refusal, and alone prosecutes this writ.

The Montague estate, being administered under the laws of Wisconsin by the defendants, other than Bryant, owned a part or all the stock of several corporations, including the stock in question. Bryant was the general manager of and paid by one of the corporations, but had no employment from the estate. Plaintiffs, residents of Chicago, bought and sold investment securities and acted as agents and brokers for the sale of stocks, etc. On March 9, 1920, plaintiffs' agent, who had had business relations personal to Bryant, called on Bryant, and says that Bryant said to him, about the stock in question:

"We want to list this stock with your company for sale at 90."

The agent then, without Bryant's knowledge, wrote to plaintiffs the following:

"Please sell for C. S. Bryant, 417 Third street, La Crosse, Wis., 551 shares Union Bag Paper preferred stock at 90 or better. G. T. C. This stock is now held by the Montague estate, La Crosse, Wis., and although they will need some of the funds for taxes we will get some for reinvestment."

Plaintiffs claim they sent a letter the next day to Bryant, which Bryant denies receiving, saying:

"In compliance with your request, we have entered your order, good until canceled, to sell 551 shares Union Bag & Paper Company at 90."

There was no other communication between Bryant and plaintiffs, and there was no meeting or communication between plaintiffs and any administrator at any time. Bryant's talk with Winifred Montague, as related by him, was that it would be necessary for the estate to sell some stock to pay inheritance tax, etc., and that they did not know how to proceed; that many bond salesmen came there almost daily, and "we would speak to one of them, and ask him, if he would run into any one he thought might be interested in this stock and could tell us how we could dispose of it, turn it into cash"; that thereafter, on March 9th, plaintiffs' representative came to see him, and Bryant says he asked him:

" 'Do you suppose in your travels that you would run into anybody that would be interested in that stock? The estate is going to dispose of it, and if you run into any one, and let us know, we would be glad to hear from you.' Mr. Roth said he might run into some one, and that he would be

glad to let us know, and he says, 'Whom should I notify if I find any one?' I said, 'You can notify me; I am here each day.' He said he would. I did not tell him to sell it. I made no statement to him that I listed it for sale. The conversation was a short one. Not longer than a minute, if that long. He did not have any chair in my office as I recall it. He stood in the doorway. As he went away I recall saying to him, 'Now, you will let us hear from you, won't you?' And he says, 'Surely I will.'"

Bryant says he then reported to Mrs. Montague that he had told plaintiffs' representative about the stock and "asked him, if he would run into any one interested, to let me know." That was all Mrs. Montague knew about any alleged transactions with plaintiffs until after the sale, when Bryant showed her the letter of March 22d from plaintiffs to him, viz.:

"We have to-day sold for your account 551 shares Union Bag & Paper Corporation at 90. Kindly forward this stock to us at your earliest convenience. Enclosed find statement."

And then he told her he had not authorized them to sell the stock. He also says that the next day he phoned Mrs. Montague that one of plaintiffs' men wanted to know about the delivery of that stock, and that she said:

"Mr. Winter told me that he would get an order from the court to-day to transfer that stock."

That she also said he could tell that to plaintiffs. At the close of the evidence, the court directed a verdict for all the defendants, except Winifred Montague.

[1] Plaintiffs urged that as to Bryant the direction was proper, because, when this stock was originally placed with plaintiffs' representative for sale by Bryant, Bryant called the agent's attention to the fact that the stock belonged to an estate, and the letter by their agent, transmitting the order to plaintiffs, expressly called attention of plaintiffs to the fact that this stock belonged to the Montague estate. They correctly state the evidence on that point. There then is no way by which either the contract or the sale can be construed to be the contract or the sale of Winifred Montague.

The Wisconsin statutes provide (section 3837, Wis. Stats. 1917):

"The county court, on the application of the executor or administrator, may at any time order the personal estate of any deceased person to be sold at public or private sale, when it shall appear to be necessary for the purpose of paying debts, legacies, expenses of administration, or for the preservation of the property, or when it shall be requested by all the heirs residing in this state; or the court may order such personal property to be sold at public or private sale as the executor or administrator may find most beneficial. If the order be to sell at auction the court shall direct the mode of giving notice of the time and place of sale."

In plaintiffs' statement of facts the only reference to the stock between Mrs. Montague and Bryant, and she had no conversation with any one else about it, is:

"When conferences were had between Mrs. Montague and Bryant, it was always the sale of the Union Bag & Paper Company stock that was under discussion and the necessity of selling that stock, not only on account of the inheritance tax which the estate would soon be obliged to pay, but to reimburse the Montague Company for moneys advanced to the estate."

Bryant admitted that Mrs. Montague requested him to talk with one of the bond salesmen and "ascertain if he might run into some one interested in the stock." This is all that counsel has disclosed of what happened between Bryant and Mrs. Montague before the time when, as claimed, Bryant made the contract with plaintiffs. Our search of the record convinces us that counsel found everything. That evidence not only does not show authority given to Bryant to sell, but shows, on the contrary, that the only authority given Bryant was to ascertain by talking to a bond salesman "if he might run into some one interested in the stock." Bryant nowhere claims that he had any authority from Mrs. Montague to sell the stock, but, on the contrary, always told her that he never authorized plaintiffs to sell. We find no evidence to support the claim that Bryant had any authority to bind Mrs. Montague or the estate.

[2] It is urged that there was a ratification, and counsel refer to things said and done by Winter, counsel for the Montague estate. It is urged that, when Bryant gave Mrs. Montague plaintiffs letter of March 22d, she exclaimed, "Well, that is pretty quick work," and seemed pleased. Bryant testified that she, at the same time, said that she would take the letter to the attorney for the estate, and that he, at the same time, assured her that he had not authorized any sale. That she did not intend her exclamation to be a ratification is clearly indicated by the next item of testimony, relied upon by plaintiffs, viz. Bryant testified that she told him he might tell plaintiffs that Mr. Winter had said he would get an order that day to transfer the stock. That was notice that she personally did not have any intention of ratifying anything, but gave plaintiffs to understand that a court order was necessary to the validity of any action on her part. Bryant says that occurred March 24th. On March 25th, Winter wrote to plaintiffs, plainly saying that he did not understand the estate was bound by anything Bryant had done, and clearly indicates there was no intention to ratify anything.

Subdivision 3 of section 4971, Revised Statutes of Wisconsin, provides:

"All words purporting to give a joint authority to three or more public officers or other persons shall be construed as giving such authority to a majority of such officers or other persons unless it shall be otherwise expressly declared in the law giving the authority."

This statute has been held to apply to executors. Melms v. Ffister, 59 Wis. 186, 196, 18 N. W. 255; Nehrling v. State, etc., 112 Wis. 637, 644, 88 N. W. 610. We are of opinion that Mrs. Montague did not ratify the sale, and that plaintiffs knew that she was in no way acting otherwise than for the estate in anything that is claimed to be a ratification.

Judgment is reversed.