STATE of Wisconsin EX REL. FLINT BUILDING COMPANY,
Petitioner-Appellant,

v.

KENOSHA COUNTY BOARD OF REVIEW, Respondent.†

Court of Appeals

No. 84–1149. Submitted on briefs June 24, 1985.—
Decided August 21, 1985.
(Also reported in 376 N.W.2d 364.)

† Petition to review pending. This petition was not decided at the
time the volume went to press. Its disposition will be reported in
a later volume.

For the petitioner-appellant, the cause was submitted on briefs of *John A. Hazelwood* and *Norman J. Bruns*, of *Quarles & Brady*, of Milwaukee.

For the respondent, the cause was submitted on the brief of *William P. Nickolai*, 1st Asst. Corporation Counsel, Kenosha County, of Kenosha.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J. This case involves the assessment of real property for tax purposes. The issue before us is whether a board of review created pursuant to sec. 70.46 or 70.99, Stats., is required to make an adjustment for various financing arrangements (cash equivalency adjustment) when analyzing sales of comparable properties for tax assessment purposes. We certified this issue to the Wisconsin Supreme Court for review and determination. Our certification request was denied. We now hold that when considering objections to valuations, a board of review is required to consider the effect of a cash equivalency adjustment on the sale price of comparable properties in determining full value under sec. 70.32, Stats. Because we conclude the board of review's refusal to consider the cash equivalency adjustment was an error resulting in a void assessment, we reverse.

The Flint Building Company (Flint) is the taxpayer in this case. It appeals the decision of the Kenosha County Board of Review[1] which upheld the Kenosha county assessor's 1981 property tax assessment of its 399-unit apartment complex known as Wood Creek Apartments. Flint contends the property is overassessed by an amount of $2,315,900.

On April 13, 1982, a hearing on an objection to the 1981 tax assessment of the Wood Creek Apartments was held before the Kenosha County Board of Review pursuant to sec. 70.47(8), Stats. At the hearing, Flint presented two expert witnesses, Walter Spiegel and Tim Warner, who testified as experienced appraisers. Spiegel testified that as of January 1, 1981, the fair market value of the Wood Creek Apartments was $4,800,000. The assessor valued the apartments at $7,115,900.

---

[1] The Kenosha County Board of Review operates under a county assessor system pursuant to sec. 70.99, Stats.

Both the assessor and Flint's expert used the market and income approaches to valuation and relied upon the sales of two comparable properties, the Shagbark Apartments in Kenosha and the Dutchman's Creek Apartments in Ashwaubenon, in assessing the fair market value of the Wood Creek Apartments.[2] Neither of these sales, however, involved purely cash transactions. Instead, they each involved a land contract and/or assumption of existing mortgages. Spiegel testified that both sales actually involved below-market financing, and therefore he reduced the sales price to the equivalent of a cash transaction using a cash equivalency adjustment. Warner verified the accuracy of Spiegel's figures. The assessor testified that he did not use the cash equivalency adjustment in his analysis and that as a general rule assessors are not required to use the adjustment.

At the close of the hearing, the board of review upheld the value set by the Kenosha county assessor. Flint appealed the decision to the circuit court by an action for certiorari pursuant to sec. 70.47(13), Stats. The circuit court affirmed the decision of the board of review, concluding that "[t]he evidence of value furnished by the assessor is presumptively correct and was ample to support [the board's] decision." Flint appeals.

The principles of law governing jurisdiction of courts in reviewing the findings of boards of review on certiorari are well-settled. *State ex rel. Wisconsin Edison Corp. v. Robertson,* 99 Wis. 2d 561, 565, 299 N.W.2d 626, 628 (Ct. App. 1980). On review, it is not the function of the courts to make an assessment of property or to order that an assessment be entered at any fixed sum. *Rosen v. City of Milwaukee,* 72 Wis. 2d 653,

---

[2] Flint's expert testified that he did not use the cost approach because of the difficulty in estimating the total depreciation. The assessor testified that he used all three approaches, including the cost approach.

661, 242 N.W.2d 681, 684 (1976). Their only function is to determine, from the evidence presented to the board of review, whether the valuation was made on the statutory basis. *Id.*

The presumptions all favor rightful action of the board. *Id.* However, an assessment may be set aside by a reviewing court where the court finds that the board failed to make the assessment on the statutory basis. *State ex rel. Boostrom v. Board of Review,* 42 Wis. 2d 149, 156, 166 N.W.2d 184, 188 (1969). Such failure is an error of law correctable by the reviewing courts on certiorari. *Id.*

Chapter 70 of the Wisconsin Statutes governs general property taxes. Section 70.32, Stats., controls the valuation of real estate and provides in pertinent part:

**Real estate, how valued. (1)** Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value the assessor shall consider, as to each piece, its advantage or disadvantage of location, quality of soil, quantity of standing timber, water privileges, mines, minerals, quarries, or other valuable deposits known to be available therein, and their value; but the fact that the extent and value of minerals or other valuable deposits in any parcel of land are unascertained shall not preclude the assessor from affixing to such parcel the value which could ordinarily be obtained therefor at private sale.

Local assessors must value real property in the manner specified in the Wisconsin property assessment manual (assessment manual) prepared by the Wisconsin Department of Revenue. *See* secs. 70.32(1) and 73.03(2a), Stats. The purpose of the assessment manual is to discuss and illustrate accepted assessment methods, tech-

niques and practices "with a view to more nearly uniform and more consistent assessments of property at the local level." Sec. 73.03 (2a).

Flint contends sec. 70.32, Stats., and the assessment manual require that property be assessed in terms of what the owner would receive in an all-cash sale. In order to accurately assess real property at its "full value" where noncash sales are involved, Flint claims that all noncash consideration must be reduced to cash using the cash equivalency adjustment.[3] The cash equivalency adjustment, Flint asserts, is a principle which cuts across all three basic valuation methods—income, market and cost. Flint contends that because the tax assessor rejected the use of the cash equivalency adjustment in this case, the assessor failed to make the assessment on the statutory basis. Consequently, Flint claims that the assessor, whose valuation was upheld by the board of review, valued Flint's property in excess of its fair market value.

The goal of the tax assessor is to estimate the full or market value of the real property. 1 *Wisconsin Property Assessment Manual for Wisconsin Assessors, Real Property Valuation*, 7–3 (Rev. 12/82).[4] The

---

[3] The essence of the cash equivalency adjustment is that consideration received by a seller must be valued in terms of its cash value. The sale price of each of the other comparable properties must be adjusted downward to reflect favorable seller financing. This involves estimating the present value of the difference reflected by the lower rate of interest as compared to the prevailing rate. *See* B. Saler, "Adjusting for Terms of Financing in the Assessment Process," 4 *Assessment Digest* 13 (March/April 1982).

[4] The Wisconsin property assessment manual uses the term "market value" as the equivalent of the statutory term "full value" as used in sec. 70.32(1), Stats. 1 *Wisconsin Property Assessment Manual for Wisconsin Assessors*, Real Property Valuation, 7–3 (Rev. 12/82). "Market value" is defined as:

assessor is obliged to carefully examine each sale to determine if there are any reasons why the sale price is not equal to market value. *Assessment Manual* at 7–4. Section 70.32, Stats., has been construed to mean that real property must be assessed on the basis of its fair market value. *State ex rel. East Briar, Inc. v. Board of Review,* 113 Wis. 2d 33, 36, 334 N.W.2d 692, 694 (Ct. App. 1983); *Rosen,* 72 Wis. 2d at 661, 242 N.W.2d at 684. "Fair market value of land is the amount it will sell for upon negotiations in the open market between an owner willing but not obliged to sell and a buyer willing but not obliged to buy." *East Briar* at 36–37, 334 N.W.2d at 694, quoting *Rosen* at 661, 242 N.W.2d at 684.

The tax assessor is required to use the "best information" available in valuing real property. Sec. 70.32, Stats.; *Fontana v. Village of Fontana-on-Geneva Lake,* 107 Wis. 2d 226, 232, 319 N.W.2d 900, 902–03 (Ct. App. 1982), *aff'd,* 111 Wis. 2d 215, 330 N.W.2d 211 (1983). The best information available to establish the fair market value of real property is a sale of the property. *State ex rel. Kaskin v. Board of Review,* 91 Wis. 2d 272, 278, 282 N.W.2d 620, 622–23 (Ct. App. 1979). In the absence of such a sale, the best information is a recent arm's-length sale of comparable properties. *East Briar* at 37, 334 N.W.2d at 695. Comparability depends upon the degree of similarity between the prop-

---

**Market Value**—The amount of cash, or in terms reasonably equivalent to cash, for which the property would be sold by an owner willing but not obliged to sell to a purchaser who desires but is not obliged to buy. In estimating that figure, consideration should be given to all matters that might be brought forward and reasonably given substantial weights in bargaining by persons of ordinary prudence, including the present worth of all the rights to future benefits arising from ownership.

*Assessment Manual* at G–8.

erties considering location, improvements, size, use and *"conditions of sale."* (Emphasis added.) *Kaskin* at 279, 282 N.W.2d at 623; *Rosen* at 665, 242 N.W.2d at 686.

Due to recent high interest rates, real estate buyers and sellers have used different types of financing arrangements to finance property sales. In this case, the testimony at the hearing before the board of review revealed that large apartment complexes have sold in recent years under various creative financing arrangements rather than for cash. Such financing arrangements have included land contract financing. Using such financing arrangements, a buyer might pay more for a property where the payments are made over an extended period of time than he or she would have paid had the sale been financed through a conventional mortgage. *See County of Washtenaw v. State Tax Commission*, 337 N.W.2d 565, 567 (Mich. App. 1983). Cash equivalency is an adjustment factor that removes special effects of financing, positive or negative. The cash equivalency adjustment is made only when it has been determined that the payment received by the seller is not in cash or its equivalent.

In this case, the assessor concluded that the Shagbark Apartments sold for a total sale price of $4,960,000 and the Dutchman's Creek Apartments sold for $6,699,000. The assessor did not utilize the cash equivalency adjustment to arrive at these figures. Flint's expert, on the other hand, used the cash equivalency adjustment to value the consideration received in the sale by land contract and assumption of mortgages of the Shagbark Apartments and arrived at a cash equivalent value of $3,922,570. Flint's expert established $5,774,160 as the cash equivalent value of the Dutchman's Creek Apartments which was also sold on a land contract and involved the assumption of existing mortgages at various interest rates.

The terms of a sale can have a significant effect on sales prices and on the value of the property. *County of Washtenaw* at 568;[5] *cf. East Briar* at 39, 334 N.W.2d at 695–96. Therefore, we follow the line of authority from other jurisdictions which holds that the selling price of a particular piece of property is not conclusive as evidence of the value of that piece of property where the terms of the sale of that property may affect its "full value." *See, e.g., Antisdale v. City of Galesburg,* 362 N.W.2d 632, 638 (Mich. 1985); *People ex rel. Korzen v. Belt Railway Co.,* 226 N.E.2d 265, 267 (Ill. 1967); *Schleiff v. County of Freeborn,* 43 N.W.2d 265, 268–69 (Minn. 1950).

As the assessment manual notes, real property valuation does not exist in a vacuum. Assessment Manual at 7–9. An assessor cannot merely apply the principles of property valuation to a specific property but must also be aware of the trends and factors that occur on the international, national and regional levels as well as those which have an influence at the neighborhood and municipal levels. *Id.; see also id.* at 9–1.

We conclude sec. 70.32(1), Stats., requires the use of the cash equivalency adjustment in assessing real property based upon the sales of comparable properties. We hold that when assessing property for tax purposes based upon the sales of comparable properties, the board of review must consider the effect of creative financing arrangements upon the sale price in order to establish the "full value" of the property. We are thus persuaded

---

[5] In *County of Washtenaw v. State Tax Commission,* 337 N.W. 2d 565, 568 (Mich. App. 1983), the court held that "a tax assessment system which does not consider creative financing is in fact unconstitutional."

that Flint's property was not assessed on the proper statutory basis. Both the assessor's and the board of review's failure to use the cash equivalency adjustment in analyzing the sales of comparable properties in this case was improper.[6] *Cf. East Briar* at 39, 334 N.W.2d at 696. Therefore, we reverse the circuit court's order affirming the decision of the board. We remand to the circuit court for remand to the board of review pursuant to sec. 70.47 (13), Stats.

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

[6] Other jurisdictions faced with this issue have required the use of the cash equivalency adjustment in assessing property value for tax purposes based upon sales of comparable properties. *See, e.g., Washtenaw,* 337 N.W.2d 565; *Woodridge Apartments v. County of Ramsey,* No. TA–192, slip op. (Minn. Tax Ct. Sept. 25, 1984); *JRS Investments v. County of Hennepin,* No. TC–1336, slip op. (Minn. Tax Ct. April 30, 1982); *West Grant Properties v. County of Hennepin,* No. TC–1335, slip op. (Minn. Tax Ct. Aug. 17, 1982). *See also Antisdale v. City of Galesburg,* 362 N.W.2d 632 (Mich. 1985).