Mark A. FLOOD, Petitioner-Appellant,

v.

VILLAGE OF LOMIRA, BOARD OF REVIEW,
Respondent.†

Court of Appeals

*Nos. 88–0862, 88–0863. Submitted on briefs December 8, 1988.—
Decided February 9, 1989.*

(Also reported in 440 N.W.2d 575.)

† Petition to review granted.

For the petitioner-appellant the cause was submitted on the briefs of *George M. St. Peter* and *John A. St.*

*Peter* and *Edgarton, Ondrasek, St. Peter, Petak & Massey,* of Fond du Lac.

For the respondent the cause was submitted on the brief of *Mike P. Fortune* and *Colwin, Fortune, Colwin & English, S.C.,* of Fond du Lac.

Brief of amicus curiae was filed by *Donald J. Hanaway,* attorney general, and *Burneatta L. Bridge,* assistant attorney general, on behalf of Wisconsin Department of Revenue.

Before Gartzke, P.J., Dykman and Eich, JJ.

DYKMAN, J.    This is an appeal from a judgment affirming a village of Lomira board of review order which sustained the assessor's valuation of Mark Flood's real estate.[1] The issue is whether the assessor and board of review used the statutory basis to value Flood's real estate.[2] Flood disputes the board's refusal to make a cash equivalency adjustment to the purchase price of his real estate, and the board's increase of Flood's purchase price by six percent to reflect the Wisconsin Department of Revenue's (DOR) equalized assessment of Lomira. We conclude that in both respects, the board's order was not made on the

---

[1] The trial court rendered a memorandum decision from which Flood appealed. We are to look beyond the label of a document to ascertain whether the trial court intended it to be final. *In re Incorporation of Town of Fitchburg,* 98 Wis. 2d 635, 647–48, 299 N.W.2d 199, 205 (1980). We conclude the trial court intended its memorandum decision to be final.

[2] Section 70.32(1), Stats., provides in part:

Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale.

statutory basis. We therefore reverse and remand with instructions.

Flood purchased a mobile home park in Lomira in 1984. His purchase price was $650,000. The entire purchase was financed by the seller, who received a first mortgage securing a $500,000 note with interest at ten percent per annum, and a second mortgage securing a $150,000 note with interest at two percent over the prime rate.[3]

In 1986, Lomira's board of review sustained the town assessor's determination that Flood's property had a value of $704,100. Flood petitioned the circuit court for a writ of certiorari to review the board's action, and the circuit court remanded to the board with instructions to consider Flood's purchase price in its assessment of Flood's property.

On June 3, 1987, the board considered Flood's purchase price of $650,000. By this time, the 1987 tax assessment had been made, again at $704,100, and the board considered this assessment also. It refused to adjust both assessments to reflect the advantageous terms Flood received when he purchased the mobile home park. It reduced the assessments to $650,000, and then added six percent of that amount, or $39,000, to reflect Lomira's equalized value.[4] Flood again peti-

---

[3]There were other terms of the mortgage notes which, though relevant to a determination of the fair market value of the property, needlessly complicate our discussion of the board's order. For this reason, we do not set out all of the terms of the mortgage notes.

[4]Section 70.57, Stats., requires the Department of Revenue to determine the fair market or full value of all property in each county and taxation district. The difference between this value and the same determination by the local assessor is the basis for determining the district's equalization ratio or equalized value. Because Lomira's assessor valued the property in Lomira at 106 percent of its fair market value, Lomira's assessment ratio was 1.06.

tioned the circuit court for a writ of certiorari. The circuit court affirmed and Flood appeals.

We recently repeated our standard of review of the decision of a board of review in *Dempze Cranberry Co. v. Biron Review Bd.*, 143 Wis. 2d 879, 883–84, 422 N.W.2d 902, 904 (Ct. App. 1988). If an assessor's valuation is made on the statutory basis, the board of review is to presume it is correct. *Id.* at 884, 422 N.W.2d at 904. If the board of review upholds the assessor's valuation, we will not disturb this finding if the supporting evidence furnishes a substantial basis for the valuation. *Id.* However, if the assessor's valuation is not founded on the statutory basis, this is an error of law which we may correct on certiorari. *Id.*

### CASH EQUIVALENCY ADJUSTMENT

In *St. ex rel. Flint v. Kenosha County Rev. Bd.*, 126 Wis. 2d 152, 160, 376 N.W.2d 364, 368 (Ct. App. 1985), we concluded that boards of review must make adjustments for various financing arrangements when analyzing sales of comparable properties for tax assessment purposes. This adjustment is called a "cash equivalency adjustment." *Id.* The theory underlying a cash equivalency adjustment is that where a seller provides financing for the sale, the terms of the financing will become another part of the parties' bargain. *Id.* at 159, 376 N.W.2d at 367. In theory, a buyer will agree to pay a higher-than-market price for property if the seller provides lower-than-market financing. *Id.* The converse is equally true. Therefore, sales of this sort must be analyzed to determine whether financing arrangements

increased or decreased an otherwise arms-length sales price.[5] *Id.* at 160, 376 N.W.2d at 368.

In *Flint,* the cash equivalency adjustment issue arose because both the county's assessor and Flint's appraiser used a similar property as a "comparable" to arrive at the value of Flint's property. 126 Wis. 2d at 155, 376 N.W.2d at 365. The assessor, however, refused to consider the financing arrangements of the comparable property. *Id.*

Lomira's board of review was aware of *Flint,* but refused to consider Flood's financing arrangement because Flood applied a cash equivalency adjustment to his property while the *Flint* case considered the use of that theory in valuing comparable properties. 126 Wis. 2d at 158, 376 N.W.2d at 367. The trial court adopted that view. The board does not explain why a theory applicable to the valuation of comparable property does not apply to the direct evaluation of Flood's property. We see no difference in the two situations. If, as we held in *Flint,* the sales price of property is not its fair market value because of financing arrangements by the seller, there is no reason why that theory is not equally applicable when the analysis is of the sale of the taxpayer's property rather than the sale of a comparable property. Because Lomira's board of review refused to consider the cash equivalency adjustment

[5]1 *Property Assessment Manual for Wisconsin Assessors* sec. 7–20 (Rev. 12/86), discusses cash equivalency:

> The process of cash equivalency is to analyze the transaction, to determine whether or not any of the financing conditions had an affect on the sales price, and to determine the amount that the sales price was affected. Cash equivalency assumes that through this process the transaction can be adjusted to a cash amount that is indicative of market value.

appropriate to Flood's purchase, its assessment was not founded on the proper statutory basis.

## *SIX PERCENT INCREASE*

On remand, the board initially used Flood's purchase price of $650,000 as its assessment. Then, the board increased this by six percent to $689,000 because all of the property in Lomira was assessed at 106 percent of its fair market value.

Section 70.32, Stats., requires assessors to assess real estate at its fair market value. *East Briar v. Rome Board of Review,* 113 Wis. 2d 33, 36, 334 N.W.2d 692, 694 (Ct. App. 1983). This requirement is long standing and consistent. *See* sec. 17, ch. 15, Revised Statutes of 1849, (assessor shall determine full cash value of each parcel of land taxed). Despite this rule, assessors have not always assessed property at 100 percent of its fair market value. In *Schettler v. The City of Fort Howard, imp.,* 43 Wis. 48, 51 (1877), the court said:

> It is impossible for me to judge how far so vicious a habit may prevail among assessors. But even if it were universal, it seems impossible to me that it should influence the court to hesitate in giving effect to all the consequences of their willful disregard of duty. If it be true that assessments throughout the state are frequently, or generally, or universally made in defiance of the statutory rule, it appears to me better that the state, and the municipal corporations of the state, should suffer inconvenience, than that our whole system of taxation should, at the mere will of local officers, be a fraud upon the constitution, and statutes carefully framed in compliance with the constitution.

The problem had not disappeared by 1941.

> It is true that in this state it is the statutory duty of the assessor to value the property in the assessment roll "at the full value which could ordinarily be obtained therefor at private sale." (Sec. 70.32(1), Stats.) It is a notorious fact that in spite of the strenuous efforts made by the state taxing authorities for the last quarter of a century local assessments are not so made. For more than eighty years we have had state and county boards of equalization whose function it is in distributing the tax burden to equalize the valuation of districts within counties and of counties within the state. If assessors performed their duties in accordance with the statutory commands, these boards of equalization would be unnecessary.

*Estate of Ryerson,* 239 Wis. 120, 134–35, 300 N.W. 782, 788 (1941).

Since 1941, the legislature has continued to stress the requirement that assessors value property at its fair market value. The DOR is required to publish and make available to assessors the property assessment manual. Sec. 73.03(2a), Stats. The DOR may examine and test the work of assessors, to determine whether they assess property at other than full value. Sec. 73.06(3). Assessors who fail to use the Wisconsin property assessment manual may be removed from office. Sec. 17.14(1)(g), Stats.

■
Despite continued efforts by the legislature and the DOR, the village of Lomira was not assessed at full value for 1986. Instead, its property was overassessed by six percent. Because the assessor *must* assess property recently involved in an arms-length sale at its purchase price, *Darcel v. Manitowoc Review Bd.,* 137

Wis. 2d 623, 629, 405 N.W.2d 344, 347 (1987), the result of overassessing a tax district is discrimination against all district taxpayers except those who recently bought real estate. This violates the uniformity clause of art. VIII, sec. 1, of the Wisconsin Constitution.[6] The result of underassessing is the converse: discrimination against new purchasers of property, no less a constitutional violation. Only by assessing at full or fair market value does an assessor fulfill the mandate of Wis. Const. art. VIII, sec. 1.

Lomira's board of review recognized the problem of overassessment and underassessment, for it defends its six percent add-on to Flood's assessment by arguing that unless we accept this add-on, Lomira's other taxpayers will be prejudiced. This is really an argument that because the assessor has unlawfully assessed other taxpayers' property, the board should be allowed to unlawfully assess Flood's property. We do not accept this argument. The solution is for the board to follow the mandates of sec. 70.32, Stats., and the state constitution. We explained in *State ex rel. Kesselman v. Sturtevant,* 133 Wis. 2d 122, 132–33, 394 N.W.2d 745, 749 (Ct. App. 1986) that assessors are not to consider equalized value when performing their duties. The same holds true for boards of review.

In its brief amicus curiae, the Department of Revenue seeks to justify the board's six percent add-on by asserting that this procedure equalizes Flood's assessment with that of other Lomira taxpayers. This position is inexplicable in light of the department's assertion that equalized value is not a measure of fair market value of a particular parcel within a municipal-

[6]Wis. Const. art. VIII, sec. 1, provides in part: "The rule of taxation shall be uniform . . . ."

ity but instead is a test of the local assessor's overall valuation. 1 *Property Assessment Manual for Wisconsin Assessors* sec. 1–12 (1982); *Kesselman,* 133 Wis. 2d at 131–32, 394 N.W.2d at 749. There is no evidence that the board of review added six percent to the assessor's supposed fair market value assessment of other Lomira taxpayers. It had no reason to single out Flood for this discriminatory treatment.

*By the Court.*—Judgment reversed and cause remanded to the circuit court with instructions to remand to the Lomira board of review for further proceedings consistent with this opinion.