STATE of Wisconsin EX REL. James G. CAMPBELL and Holly Campbell, Plaintiffs-Respondents,

v.

TOWNSHIP OF DELAVAN, Walworth County, Wisconsin, Board of Review, Defendants-Appellants.

Court of Appeals

*No. 96–1291. Submitted on briefs February 6, 1997.—Decided April 16, 1997.*

(Also reported in 565 N.W.2d 209.)

240

242

For the defendants-appellants the cause was submitted on the briefs of *George D. Mistrioty* and *Steven R. Wassel* of *Wassel, Kilkenny, Danz, Mistrioty & Lettenberger* of Delavan.

For the plaintiff-respondents the cause was submitted on the brief of *Thomas S. Hornig* and *Margery Mebane Tibbetts* of *Brennan, Steil, Basting & MacDougall, S.C.* of Janesville.

Before Brown, Nettesheim and Anderson, JJ.

ANDERSON, J. The Township of Delavan Board of Review (Board) appeals the trial court's order reversing its valuation of James G. and Holly Campbell's (the Campbells) 1994 real estate tax assessment of their Delavan Lake home. The Board also appeals the trial court's order for judgment in favor of the Campbells and against the Attorneys for the Board (Attorneys) pursuant to § 802.05, STATS. We agree with the trial court that the record of the Board was improperly supplemented with additional "items" not submitted to the Board and affirm the order for sanctions. Because we also conclude that the Board utilized inappropriate factors when reassessing the Campbells' property at $788,300, we affirm that portion of the trial court's order as well. However, we conclude that the trial court erred when it ordered the Board to reassess the Campbells' property at a value between $600,000 and $630,000; accordingly, we reverse that portion of the

243

order. We direct the trial court to remand the matter to the Board to take action consistent with this opinion.

## Background

The Campbells own a Frank Lloyd Wright design home located along approximately 290 feet of waterfront in the town of Delavan.[1] The town had a complete revaluation of all property for the 1994 assessment year, including the Campbells' property. The town's assessor estimated the value of their property to be $435,700 for the land, plus $398,300 for improvements, for a total assessment of $834,000. The increase constituted an eighty percent increase in two years; the 1992 assessment of the Campbells' property was $464,000.

The Campbells filed an objection to the assessment. On December 16, 1994, the Board held a hearing to review the assessment. Testimony was taken from the Campbells' appraiser, Linn Duesterbeck, as well as the town's assessor, Bernie Laird, after which the Board only reduced the land assessment to $390,000 for a total assessment of $788,300.

Consequently, the Campbells filed a petition for writ of certiorari in the Walworth County Circuit

---

[1] The Campbells actually own two separate parcels. The second parcel, not at issue here, was reduced at open book to $199,400 for land and $119,700 for improvements, for a total assessment of $319,100. The assessor treated the parcels as contiguous property and determined that under the "rule book," the second parcel "would be less per front foot." Because both parcels are owned by the same person, "instead of doing the first parcel at twenty-eight hundred and then twenty-four hundred, and then starting over again at twenty-eight, [the assessor] dropped it down to the [sixteen range]." The Campbells withdrew their objection to the original assessment of the second parcel and it is not before us on appeal.

Court. The Campbells argued that the adjusted assessment exceeded the property's fair market value and the assessor and the Board failed to follow the valuation method mandated by § 70.32(1), STATS. An order for writ of certiorari was issued by the court. The Board, through its Attorneys, filed a return of writ of certiorari on May 11, 1995, along with an affidavit of the town clerk.

In a memorandum decision[2] dated October 5, 1995, the trial court determined that the Board acted outside its jurisdiction in reviewing the town assessor's valuation of the Campbells' property. The trial court concluded that the assessment was not made according to law and was unreasonable, and that the evidence in the record was insufficient to sustain the Board's decision. The trial court also included directions for the proceedings on remand and retained jurisdiction of the matter until the Board determined an assessment in accordance with its order.

On October 16, 1996, the Campbells moved the trial court for costs and attorney's fees pursuant to §§ 802.05 and 814.025, STATS., alleging that the Board's actions and pleadings filed in defense to the petition for certiorari were frivolous and without a reasonable basis in law. The trial court agreed in a written decision dated February 8, 1996, followed by a written judgment incorporating that ruling on March 18, 1996. On April 11, 1996, the trial court entered a written

---

[2] On appeal, the Campbells argued that the trial court's October 5, 1995, decision constituted a final order. Even though the decision disposed of the entire substantive litigation raised in the certiorari proceeding, we concluded in a previous unpublished opinion that the trial court intended the document solely as a memorandum decision, and not as a final order or judgment.

order providing that "[b]ased upon this Court's Memorandum Decision dated and filed with the court October 5, 1995, and the Court's Judgment dated March 18, 1996," the matter was remanded to the Board. The Board was ordered "to utilize[] the evidence in the record and the methodology required by § 70.32(1), Wis. Stats., to re-assess [the Campbells'] property for 1994 tax purposes at a value between $600,000 and $630,000." The Board appeals. Additional facts will be included within the body of the decision as necessary.

The Board makes three arguments: (1) the trial court erred by requiring the Board to set the value of the subject real estate between $600,000 to $630,000, (2) the trial court misapplied the mandates of § 70.32(1), STATS., and (3) the trial court erred in awarding sanctions for the Attorneys' failure to make an investigative inquiry. We will address them in reverse order.

## Section 802.05, STATS., Sanctions

The Attorneys argue that the trial court erroneously applied § 802.05, STATS. Section 802.05 is composed of three prongs: (1) the person who signs a pleading, motion or other paper certifies that the paper was not interposed for any improper purpose; (2) the signer warrants that to his or her best "knowledge, information and belief formed after reasonable inquiry" the paper is "well grounded in fact"; and (3) the signer certifies that he or she has conducted a reasonable inquiry and that the paper is warranted by existing law or a good faith argument for a change in it. *See Riley v. Isaacson*, 156 Wis. 2d 249, 256, 456 N.W.2d 619, 621 (Ct. App. 1990). If any one of these three

prongs has been violated, sanctions must be imposed. *See id.* at 256, 456 N.W.2d at 621–22.

Our standard of review is a deferential one. *See id.* at 256, 456 N.W.2d at 622. Determining what and how much prefiling investigation was done is a question of fact and we are bound by the trial court's findings unless they are clearly erroneous. *See id.* Determining how much investigation should have been done is a matter within the trial court's discretion. We will sustain a discretionary act if the trial court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See id.* at 256–57, 456 N.W.2d at 622.

The trial court made several factual findings relative to the Campbells' claims that the Attorneys' defense lacked a legitimate basis in fact and law and that the Attorneys improperly submitted exhibits not introduced into the record before the Board. The trial court based its determination on the following:

1. Respondents' brief maintains that the Board and the Assessor complied with § 70.32, Wis. Stats. in that they considered sales of reasonably comparable properties. Respondents attempt to discount the fact that the Assessor admitted that he used an arbitrary "front-footage" formula to assess Petitioners' property . . . . The fact that Respondents included exhibits that were not presented to the Board indicates the Respondents knew the record did not support their position.

2. The submission of items not included in the record before the Board is evidence of the Respondents' Attorneys' choice to ignore the law for improper purpose.

3. Further evidence that the inclusion of these items was done for improper purpose is the fact that the record was submitted to the court under a transmittal letter . . . [which] indicated that a copy of the cover letter and affidavit were sent to Petitioners' attorney. An affidavit filed by Petitioners' attorney stated that at no time did he receive a copy of Respondents' Attorneys' transmittal letter or affidavit of the clerk certifying that the documents were original exhibits produced at the Board of Review hearing. Respondents intentionally did not send copies of the letter and affidavit in order to keep Petitioners from objecting to the submission. At no time in Respondents' brief on the merits of the certiorari action did they refute the allegations of supplementing the record . . . [nor] did Respondents address the allegations of not properly sending copies to Petitioners' attorney.

The record supports these findings. Moreover, the Attorneys do not contest these findings; rather, they argue that "the Return to the Writ of Certiorari is not a pleading that requires service on all parties . . . . Although the Return . . . was signed by an attorney . . . no legitimate sanction can or should be imposed. The document in question is not a pleading." Although we agree that a return to the writ of certiorari is not a pleading, *see State ex rel. Sahagian v. Young*, 141 Wis. 2d 495, 499, 415 N.W.2d 568, 570 (Ct. App. 1987), it does constitute "other paper" of a party and is therefore subject to § 802.05, STATS., sanctions. We conclude that the trial court's findings of fact are not clearly erroneous.

Our second inquiry is whether the trial court mis-used its discretion in concluding that the Attorneys' actions failed to meet the legal standard of reasonable inquiry. *See Riley*, 156 Wis. 2d at 258, 456 N.W.2d at 622. The Attorneys play a major deflection game in an attempt to avoid the imposed sanctions. They argue that their defense was reasonable because (1) they relied on what the town clerk "claims to constitute the record"; (2) the Campbells never brought a motion to correct the record prior to their motion for costs and fees; (3) "the documentation was supplied to the Trial Court for consideration if appropriate and exclusion if inappropriate"; (4) "the record" is not specifically defined by statutes; and (5) all documents listed on the return and supporting affidavit "were used during the testimony at [the hearing] and for that reason, were properly submitted to the Court pursuant to the [return]."

We note at the outset that § 802.05, STATS., bars a defense of "good faith." *See Riley*, 156 Wis. 2d at 259, 456 N.W.2d at 623. Section 802.05 "creates obligations to one's adversaries and to the legal system to avoid needless cost, delay and waste of judicial resources. In particular, it mandates an affirmative duty of reasona-ble inquiry before proceeding with a claim or filing any paper." *Id.*

It is apparent that the Attorneys did not conduct even a rudimentary verification of the contents of the record before signing the return. The Attorneys were not present at the hearing before the Board and they seem to hang their hat on this fact.[3] They concede that

---

[3] The Board also argues that the Campbells' attorney attempted to use his knowledge to exclude items from being marked as exhibits and that "the Court should not have allowed the [Campbells'] attorney to limit the record to only marked

the town clerk can not adequately determine what constitutes the record. Yet, they state that "since the Attorneys sanctioned were not part of the underlying proceedings, it is impossible to do anything but rely upon what the Clerk claims to constitute the record." The fact that the Attorneys were not present at the hearing is, in our view, all the more reason for an independent examination of the facts. The return and cover letter were signed by the town's attorney, Steven R. Wassel, who also averred that "[t]he return of the foregoing Writ is made herein upon the Affidavit annexed hereto and incorporated herein by reference and the documentation appended hereto." It is clear from the transcript of the hearing that the town clerk fully understood what exhibits are since she marked four of them. The transcript also reveals that the town's assessor attempted to include the property report card, but opted not to enter the market data in the record. An independent examination of the transcript would have revealed this.

The Attorneys next argue that the "only appropriate avenue" for the Campbells was a motion to correct the record. While it is true that a party *may* move to amend a return when the return does not show the entire record, a party is not required to do so. *See State*

---

exhibits when clearly more than that was relied upon during the hearings." These contentions are simply unsupported by the record. The assessor did refer to the property record card and attempted to have it marked as an exhibit. However, the *assessor* also stated that he would not enter the supporting data, i.e., the sales analysis, into the record, despite the fact that he "entered it into the record in previous hearings." Clearly, it is the assessor who neglected to have these items entered into the record and it should not have been supplemented at a later date.

*ex rel. Paulson v. Town Bd.*, 230 Wis. 76, 80, 283 N.W. 360, 362 (1939). Here, the allegation was that the record was supplemented by the Attorneys. Because the Attorneys did not address the allegation in their brief, the trial court took them as confessed and found that the inclusion was done for improper purpose—to keep the Campbells from objecting to the submission.[4] It was not a misuse of discretion for the trial court to determine that items were included in the record for improper purpose.

The Attorneys further argue that the town did not "rely on any of the supposedly inappropriate materials. Even if they had, there was no order from the Court excluding them from consideration. What does or does not constitute 'the record' is a matter for the Court to decide." This ties in with the Attorneys' assertion that what constitutes "the record" is not specifically defined.

First, the order for writ of certiorari specifically ordered the town clerk to "transmit the entire record of the proceedings herein, including exhibits, transcripts, filings, letters, and objections to the real property assessment." The order limits the transmittal to the record of the proceedings. The return to a writ of certiorari is a *certification* of the record of the proceedings to be reviewed. *See Consolidated Apparel Co. v. Common Council*, 14 Wis. 2d 31, 36–37, 109 N.W.2d 486, 489 (1961).

"Record" is implicitly defined in § 70.47(18)(a), STATS., TAMPERING WITH RECORDS, which allows for a fine or imprisonment for alteration or concealment of the

---

[4] *State ex rel. Sahagian v. Young*, 141 Wis. 2d 495, 501, 415 N.W.2d 568, 571 (Ct. App. 1987), states that when respondents do not respond to the appellant's propositions, the courts take them as confessed.

*"items specified under subs. (8)(f) and (17)."* (Emphasis added.) Section 70.47(8)(f) refers to "[t]he clerk's notes, written objections and *all other material submitted* to the board of review, tape recordings of the proceedings and any other transcript of proceedings . . . ." (Emphasis added.) Subsection (17) requires the clerk to prepare a summary of the proceedings and determinations on a form prescribed by the department of revenue. It follows that only these items constitute the official record for purposes of review.

Clearly the extraneous materials submitted with the return were not part of the official record. Review of the file demonstrates that "Exhibits & items 'E' & 'F' " were transmitted to the trial court, not Exhibits A through F as averred in the town clerk's affidavit. Although the town clerk's affidavit states that "[t]he property card and exhibits contained therein were presented to the [Board] by the assessor in *all* 1994 Board of Review proceedings and . . . were received, reviewed and considered by the [Board] in these proceedings," the record belies this statement. The transcript reveals that the assessor attempted to enter the "property record card, the front page, the summary of the pricing, photographs, the sketch of the house and the garage and the lot here" into the record, but he did not have them marked as an exhibit for submission to the Board. (Hence, "item 'E' ".) Nevertheless, we conclude that those portions of item "E"—the property card, the front page, the summary of the pricing, photographs, and the sketches of the house, garage and lot—do constitute a portion of the record. It has long been held in certiorari proceedings that only matters which by law form a part of the official record should be included with the return, and if other matters are

included they cannot properly be considered. *See State ex rel. Augusta v. Losby*, 115 Wis. 57, 62, 90 N.W. 188, 190 (1902); *see also Nehrling v. State ex rel. Thal*, 112 Wis. 637, 643, 88 N.W. 610, 613 (1902) (where the tribunal below is required by statute to keep records, the return must consist exclusively of the record of the tribunal below, and no missing link can be supplied by the recollection of the lower tribunal or the affidavits of other persons). Accordingly, the remaining portions of item "E" and all of item "F" do not constitute part of the official record and cannot properly be considered by the Board.

■

The Attorneys' final contention is that all documents listed on the return and supporting affidavit "were used during the testimony at [the hearing] and for that reason, were properly submitted to the Court pursuant to the [return]." We disagree. As indicated above, the transcript reveals that the assessor asked to admit only portions of what has been titled item "E." Although not properly marked as an exhibit for submission to the Board, the Campbells did not object to review of those seven items. However, the additional materials were not submitted to the Board and therefore do not constitute part of the record. In addition, the assessor specifically stated that he had entered the market data into the record in other hearings, but not this hearing. Obviously, the assessor was aware of the procedures required to submit an exhibit to the Board, but failed to do so in this case. It is improper for the Attorneys to supplement the record after-the-fact. "In all cases the writ goes to the body or officer controlling the record, and must be responded to by a production of the record, and must stand or fall by the record." *Augusta*, 115 Wis. at 64, 90 N.W. at 191.

After considering the relevant facts before it and applying the proper law, the trial court reasonably and rationally concluded that the Attorneys included items in the record for improper purpose, that its defense and corresponding brief were not well-grounded in fact, and that the record submitted was not warranted by existing law and the Attorneys, after reasonable inquiry, should have known this. It was not a misuse of discretion for the trial court to determine that the Attorneys neglected the investigative duties of § 802.05, STATS. Accordingly, we affirm the sanction against the Attorneys. Furthermore, in accordance with *Riley*, 156 Wis. 2d at 262, 456 N.W.2d at 624 ("if the claim was correctly adjudged to be frivolous in the trial court, it is frivolous *per se* on appeal"), we remand to the trial court to determine and award the Campbells their appellate attorney's fees.

## The Assessment

The Board's next contention is that "the trial court erred in assuming that the legislative changes made to sec. 70.32(1), Wis. Stats., had no effect on the existing status of the law." Even if the statutory amendment has not altered the status of the existing case law, the Board contends that the Campbells have not met their burden of proof in proving that the assessor did not follow the mandates of § 70.32(1). Both arguments are without merit.

The scope of this court's review is identical to that of the trial court; our review is independent and does not rely on the trial court's conclusions. *See Steenberg v. Town of Oakfield*, 167 Wis. 2d 566, 571, 482 N.W.2d 326, 327 (1992). This court considers: " '(1) [w]hether the board kept within its jurisdiction; (2) whether it

254

acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.' " *City of West Bend v. Continental IV Fund*, 193 Wis. 2d 481, 485, 535 N.W.2d 24, 26 (Ct. App. 1995) (quoted source omitted).

Wisconsin has codified the procedure for determining the fair market value of real estate for assessment purposes. Section 70.32(1), STATS., provides in part:

> **Real estate, how valued. (1)** Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain . . . . [T]he assessor shall consider recent arm's-length sales of the property to be assessed . . . ; recent arm's-length sales of reasonably comparable property; and all factors that . . . affect the value of the property to be assessed.

The Board contends that "the trial court erred in assuming that the legislative changes made to sec. 70.32(1), Wis. Stats., had no effect on the existing status of the law." The Board argues that the new language "changes the priority required to be given to [recent arm's-length] sales in determining fair market value." The "[p]lacement of the word 'and' within the context of this new language makes [it] clear" that the assessor can now consider "other factors" in the presence of reasonably comparable properties. We disagree.

This issue concerns the interpretation of § 70.32(1), STATS. Statutory construction presents a question of law which we review independently of the

trial court. *See State v. Timmerman*, 198 Wis. 2d 309, 316, 542 N.W.2d 221, 224 (Ct. App. 1995). Under the canons of statutory construction, there is a statutory presumption that the legislature knows about the previous statute and about the impact that case law, here *State ex rel. Markarian v. City of Cudahy*, 45 Wis. 2d 683, 686, 173 N.W.2d 627, 629 (1970),[5] had upon it. *See Carol J.R. v. County of Milwaukee*, 196 Wis. 2d 882, 888, 540 N.W.2d 233, 235 (Ct. App. 1995); *see also Kindy v. Hayes*, 44 Wis. 2d 301, 314, 171 N.W.2d 324, 330 (1969) (it is presumed that the legislature acted with full knowledge of the existing law, both the statutory and court decisions interpreting it). Our supreme court has stated that where a legislative act has been construed by this court, the legislature is presumed to know that in the absence of the legislature explicitly changing the law, the court's construction will remain unchanged. *See Reiter v. Dyken*, 95 Wis. 2d 461, 471, 290 N.W.2d 510, 515 (1980).

These canons apply to this case. The *Markarian* court clearly and unambiguously outlined the hierarchy structure, which has been the long-standing

---

[5] The hierarchy structure was clearly enunciated in *State ex rel. Markarian v. City of Cudahy*, 45 Wis. 2d 683, 686, 173 N.W.2d 627, 629 (1970): "The 'best information' of such value is a sale of the property or if there has been no such sale then sales of reasonably comparable property. In the absence of such sales, the assessor may consider all the factors collectively in order to determine its fair market value." This structure however was derived from long-standing case law. *See, e.g., State ex rel. Enterprise Realty Co. v. Swiderski*, 269 Wis. 642, 645, 70 N.W.2d 34, 35 (1955); *State ex rel. Hennessey v. City of Milwaukee*, 241 Wis. 548, 553, 6 N.W.2d 718, 720 (1942); *McArthur v. State*, 239 Wis. 120, 127, 300 N.W. 782, 785 (1941); and *Allen v. Chicago & Northwestern Ry. Co.*, 145 Wis. 263, 265–66, 129 N.W. 1094, 1095–96 (1911).

method for the assessor and the board to determine real property valuations. The legislature finally "breathed statutory life" into the *Markarian* principles by expressly spelling out the hierarchy structure. *See Carol J.R.*, 196 Wis. 2d at 889, 540 N.W.2d at 235. While the express language of the revised statute does not make reference to the *Markarian* hierarchy structure, the legislative drafting records do. The Wisconsin Legislative Fiscal Bureau Paper 603 states: "Modify the Governor's recommendation by removing the requirement that assessors value 'all interests' in property and clarifying that assessors may disregard the selling price of a property being assessed only when, according to professionally acceptable appraisal practices, the selling price can be shown not to conform with recent arm's-length sales of *reasonably comparable properties*." LFB Paper 603 (1991), *reprinted* 2 Comparative Summary of Assembly Bill 91, Legislative History of the 1991–93 Wisconsin State Budget, at 1065 (1991) (emphasis added).

We are therefore convinced that the court's conclusion in *Markarian* survived the legislature's actions. *See State v. Gomaz*, 141 Wis. 2d 302, 320 n.11, 414 N.W.2d 626, 634 (1987) (case law interpreting statutes survives the legislative changes that did not expressly alter the case law). Accordingly, we conclude that the hierarchy structure, as stated in *Markarian*, correctly outlines the assessment techniques to be followed by the assessor and the board when conducting real property valuations.

Our conclusion is consistent with recent case law as well which unfortunately did not specifically address the 1991 legislative changes. Nevertheless, in *City of West Bend*, 193 Wis. 2d at 490–91, 535 N.W.2d at 28, this court concluded that the changes did not

repeal prior common law interpretations that real property shall be valued from the best information that the assessor can practicably obtain. *See also State ex rel. Levine v. Board of Review*, 191 Wis. 2d 363, 372–73, 528 N.W.2d 424, 427–28 (1995) (utilizing prior case law when applying § 70.32(1), STATS., as revised by 1991 Wis. Act 39). The "best information" is considered to be a recent arm's-length sale of the subject property. *See Markarian*, 45 Wis. 2d at 686, 173 N.W.2d at 629. If there has been no such sale, an assessor may use a recent sale of a reasonably comparable property. *See id.* In the absence of these types of sales, the assessor may consider all of the factors which collectively have a bearing on the value of the property in arriving at a fair market value. *See id.*

Our interpretation is also consistent with the standards of practice outlined in 1 WISCONSIN DEPARTMENT OF REVENUE, PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS ("MANUAL"). The MANUAL is promulgated by the Department of Revenue (DOR) pursuant to § 73.03, STATS., and is the primary document for defining assessment standards and practices in Wisconsin. *See* MANUAL at 1–1 (1996).

Chapter 7 of the MANUAL explains the techniques and approaches for assessors when conducting real property valuations. When assessing the market or full value of real property, the MANUAL directs the assessor to first consider an arm's-length sale of the property. *See id.* at 7–3 (1994), 7–12 (1996). "If it is an arm's-length sale that is in line with recent arm's-length sales of reasonably comparable property, and if it is the best information available, the assessor should use the sale price as the basis for the assessment." *Id.* at 7–3.

However, when the assessment cannot be based upon the sale price of the property, "the next step is to

use recent arm's-length sales of reasonably comparable property as the basis of the assessment." *Id.* Reasonably comparable sales are competitive properties with characteristics similar to the subject which have sold recently on the local market. *See id.* The MANUAL further directs the assessor to:

> carefully examine each sale to determine if the sale price is indicative of market value. If the reasonably comparable sales are useable arm's-length transactions, the assessor can then rely upon those sales to determine the market value of the subject. If there are no reasonably comparable sales, the assessor must then analyze and collectively consider all of the information available which can be used to estimate the value of the subject. This would include like sales, a sale of the subject which may not be recent, the cost and income approaches to value, asking prices, options to purchase, outside appraisals of the subject, and the assessments of other comparable properties. After considering all of this information, the estimates of value from the several approaches are then correlated into one final value estimate.

██

*Id.* We conclude that the 1991 legislation amending § 70.32(1), STATS., did not repeal the hierarchy structure as articulated in *Markarian* and the MANUAL at 7–3; rather, the hierarchy structure must continue to be utilized by the assessor when conducting real property valuations or the board of review when considering objections to the assessments. Failure to do so constitutes an error of law. *See Levine,* 191 Wis. 2d at 373, 528 N.W.2d at 428.

The Board next argues that the Campbells have failed to meet their burden of proof in proving that the

assessor did not follow the mandates of § 70.32(1), STATS. The Board maintains that "[t]he Town's Assessor calculated the tax assessment in this case by considering sales of reasonably comparable properties," but "[i]n comparing such sales, it was necessary for the Assessor . . . to examine various factors or conditions of the respective properties." Although the assessor admitted to utilizing a formula based on how much lake frontage each property has, the Board continues to argue that this does not mean that the assessor failed to consider sales of reasonably comparable properties. The evidence simply does not support this contention.

Although the assessor's valuation is presumed to be correct, the presumption can be overcome by credible evidence that the assessor's valuation is incorrect. *See State ex rel. Wis. River Power Co. v. Board of Review*, 125 Wis. 2d 94, 97, 370 N.W.2d 580, 582 (Ct. App. 1985). If the presumption is overcome, the question is whether credible evidence was presented to the board that may in any reasonable view support the board's determination. *See id.* at 97, 370 N.W.2d at 582. The board cannot "disregard competent, unimpeached and uncontradicted evidence." *Id.* If the board disregards such evidence, the court must set aside its determination. *See id.*

We turn to the record made before the Board. We conclude that the Campbells overcame the presumption that the assessor's $834,000 valuation is correct.

Section 70.32(1), STATS., requires an assessor to value property in accordance with the MANUAL from the best information available. When the assessment cannot be based upon the sale price of the subject property, "the next step is to use recent arm's-length sales of

reasonably comparable property as the basis of the assessment." MANUAL at 7–3. Reasonably comparable sales are competitive properties with characteristics similar to the subject which have sold recently on the local market. *See id.*

The Campbells' appraiser, Duesterbeck, testified that because there were no recent sales of the subject property, he looked to recent arm's-length sales of reasonably comparable properties. After searching the market, Duesterbeck located three recent sales of waterfront property in the Delavan market area that he considered to be most applicable to the subject property in comparison. Duesterbeck testified that he considered the following elements in his comparison analysis: proximity to the subject property, smaller and larger water frontage and acreage, condition of the properties and the physical items with each property. Exhibit 3 is a summary of his findings which were submitted to the Board. Duesterbeck then adjusted the elements to reach a fair market value for the subject property. He concluded that to a reasonable degree of certainty the fair market value of the subject property as of January 1, 1994, was valued between $600,000 to $630,000.

We conclude that Duesterbeck valued the property in the manner provided in the MANUAL at 7–12 to 7–15. Duesterbeck arrived at an opinion based upon facts which he presented and submitted to the Board by employing a logical rationale. *See Wisconsin River Power Co.*, 125 Wis. 2d at 98–99, 370 N.W.2d at 582. His opinion is reasonable. We therefore conclude that the Campbells presented credible evidence that the assessor's valuation is incorrect and overcame the pre-

sumption in favor of that valuation. *See id.* at 99, 370 N.W.2d at 582.

Because the presumption favoring the assessor's valuation was overcome, the next question is whether credible evidence was presented to the Board that may in any reasonable view support the assessor's valuation.

Although the assessor testified that the values were arrived at "by looking at a cost approach and a market approach" and that "we have a set formula for the prime properties or lakefront properties in the town,"[6] that information, along with how he arrived at the figures, were not submitted in this case. The assessor also testified that the sales analysis or actual market data proving the fifty to ninety percent market increase in lakefront properties would not be made part of the record for the Campbells' hearing, but he "entered it into the record in previous hearings." The only evidence the assessor attempted to enter was the property card, the front page, the summary of the pricing, photographs, and the sketches of the house, garage and lot.

The Board expressed concern at the lack of evidence to support the assessor's land valuations, and voted against keeping the land value the same, as well as lowering it to $375,000 or $400,000. Eventually the

---

[6] The assessor explained the land values as follows:

we have the first seventy-five feet at twenty-eight hundred dollars a front foot . . . times our multiplier of 1.05 coming to two hundred and twenty thousand five hundred. The next seventy-five feet is at twenty-two hundred times our multiplier or the depth factor of 1.05, coming to one hundred and seventy-three thousand two fifty. The remaining twenty-five point five feet is at sixteen hundred dollars a front foot times our multiplier of 1.05 coming to forty-two thousand for a total value of four hundred and thirty-five thousand seven hundred and fifty.

Board settled on a land value of $390,000 in order to stay in line with the objections heard the day before.[7] The town clerk, who is a member of the Board, wanted "to use the same principal on everybody's because they've used the same footage and formula and everything in their process." Ultimately, the Board ignored the land value of comparable number one with two hundred and ninety-three feet of frontage, because in their opinion the Campbells' two parcels were more salable—the Campbells would sell off one of their lots.[8]

[7] An example of the Board's discussion on this is as follows:

KOHLER: Well, I just have a concern over the other ones that you deliberated on, and they have the same comparisons, you know, they have the—

FAHEY: From yesterday?

KOHLER: From yesterday. . . . It was land values, though, that I'm talking about.

[8] The Board had the following colloquy:

BULGER: Because I just wondered if we ain't going to get up to this two hundred and ninety-three feet or—because it's a hundred—it's almost two hundred thousand dollars on the second parcel for just the land so that means he's got to have at least another hundred to a hundred and twenty feet or so. You know, that would be putting him up around that three hundred feet of lake frontage. So then if you go back to his comp number one at two hundred and ninety-three feet of lake frontage, they both probably got pretty close to the same total. Oh, but if that's true, you'd have to add those two together, and he should be paying that.

FAHEY: Right.

BULGER: How much would that be? That would be six hundred—six hundred and thirty-four thousand he's paying for say three hundred feet. Yeah.

STEBNITZ: Separate lots are definitely more salable. BULGER: Definitely, he would sell the one lot off. Correct. Your motion was to change it to . . . three hundred and ninety thousand? . . . .

STEBNITZ: Four to two. Motion passed.

263

Based on the deliberations of the Board, we conclude that we must set aside its determination. First, resort to formulas or extrinsic factors constitutes error. *See State ex rel. Keane v. Board of Review*, 99 Wis. 2d 584, 595, 299 N.W.2d 638, 644 (Ct. App. 1980). In addition, our supreme court has specifically held that a valuation "based on what may be made by a subdivision of the property is a purely speculative value." *See McArthur v. State*, 239 Wis. 120, 138, 300 N.W. 782, 790 (1941). Lastly, the Board conceded during deliberations that Duesterbeck's evidence was more persuasive and it was uncontradicted; yet, it was ignored. When the Board disregards uncontroverted evidence, we must set aside its determination.[9] *See Wisconsin River*

---

[9] The Board refused to consider changing the value of the house despite the assessor's unexplained twenty percent mark up for the shape and design of the home. Duesterbeck testified that "there may be some additional value [relative to the fact that the property is a Frank Lloyd Wright design home] . . . it's too subjective in the market to really say that there really is any." Nevertheless, the Board members viewed the Campbells' home as one of the most "magnificent," "beautiful," and "unique" places on the lake with "exquisite" landscaping that "would list for a million dollars or more to start." The members felt that "the only place we can take it on Campbell's is the land if we take it at all." Our supreme court has expressly rejected the consideration of intrinsic value when assessing real estate. *See State ex rel. Keane v. Board of Review*, 99 Wis. 2d 584, 597, 299 N.W.2d 638, 645 (Ct. App. 1980). "There is no occasion to consider intrinsic value when an arm's-length transaction establishes value, just as there is no occasion to resort to formulas or extrinsic factors which can be tainted by considerations of intrinsic value." *Id.* Here, the 1994 comparable sales establish fair market value and negate any possible considerations of intrinsic value.

*Power Co.*, 125 Wis. 2d at 97, 370 N.W.2d at 582. For these reasons, we direct the trial court to enter judgment vacating the assessments because the Board ignored uncontroverted comparable sales, the best evidence of fair market value.

## The Remedy

Finally, the Board asserts that the trial court erred by requiring the Board to set the value of the subject real estate between $600,000 to $630,000 on remand. On this point, we agree.

The principles of law governing the jurisdiction of courts in reviewing the findings of boards of review on certiorari are well settled. *See State ex rel. Flint v. Kenosha County Bd. of Review*, 126 Wis. 2d 152, 155, 376 N.W.2d 364, 366 (Ct. App. 1985). On review, it is not the function of the courts to make an assessment of property or to order that an assessment be entered at any fixed sum. *See id.* The courts' only function is to determine, from the evidence presented to the board of review, whether the valuation was made on the statutory basis. *See id.* at 156, 376 N.W.2d at 366.

Here, the trial court remanded to the Board and ordered it to enter the Campbells' reassessment between a range of $600,000 to $630,000. This is not the function of the courts. Accordingly, we must reverse this portion of the trial court's order. Instead, we instruct the trial court to direct the Board to value the Campbells' property on the basis of the present record, utilizing comparable sales, the best evidence of fair market value. *See State ex rel. Int'l Bus. Machs. Corp. v. Board of Review*, 231 Wis. 303, 314–15, 285 N.W. 784, 789 (1939).

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.