CITY OF WEST BEND, Plaintiff-Appellant,†

v.

CONTINENTAL IV FUND LIMITED PARTNERSHIP,
Defendant-Respondent,

BOARD OF REVIEW OF the CITY OF WEST BEND,
Defendant.

Court of Appeals

*No. 94–1913. Submitted on briefs March 13, 1995.—Decided
April 12, 1995.*

(Also reported in 535 N.W.2d 24.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs *Richard C. Yde,* city attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Ronald L. Wallenfang* of *Quarles & Brady* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. The City of West Bend appeals from a circuit court order dismissing the City's complaint and affirming the board of review. Because we conclude that the board correctly held that the property in question should be assessed for tax purposes at $1,722,000, we affirm.

The material facts are not in dispute. Continental IV Fund Limited Partnership (Continental) owns a shopping center that is subject to a lease. According to the City's complaint, the City's assessor determined the assessment of the property to be $2,540,700 for 1993. Continental objected to the assessment and a hearing was held before the board. The board concluded that as a matter of law the assessment had to be reduced to $1,722,000. The City filed a complaint in circuit court, claiming that the board of review erred in assessing only the value of Continental's interest in the property and requested that the court set aside the board's decision and require that the assessment be based on the value of all interests in the property.

The trial court set forth the facts as follows:

> The parties have basically agreed that there are two ways upon which you could establish the value of this property. If you value this property based upon the contract rents, it would have a fair market value of $1,722,000.00. If you value the property using the income approach and using market rentals it would

have a value between $2,554,883.00 and $2,787,150.00.

In the instant case, the Kohls food store has a long term lease with the owners of the strip mall and that lease extends well into the next century.

The trial court dismissed the City's complaint, stating that the board acted according to law and affirmed the board's findings and holding that the value of the property was $1,722,000. The City appeals.

The standard of review applied to certiorari appeal from boards of review is as follows:

> Judicial review of the action of boards of review on *certiorari* extends only to jurisdictional errors. If the board of review does not act arbitrarily or dishonestly and the evidence presented before it is sufficient to furnish any substantial basis for the valuation found by the board, its decision will not be disturbed.

*Darcel, Inc. v. City of Manitowoc Bd. of Review*, 137 Wis. 2d 623, 625-26, 405 N.W.2d 344, 345 (1987) (quoted source omitted). This court will consider: "(1) [w]hether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *Id.* at 626, 405 N.W.2d 345-46 (quoted source omitted). We review the board's decision independent of the circuit court's conclusions. *State ex rel. Brighton Square Co. v. City of Madison*, 178 Wis. 2d 577, 584, 504 N.W.2d 436, 439 (Ct. App. 1993).

The City states that the issue on appeal is whether all interests or only the owner's interest should be assessed. The City contends: "Taxes in Wisconsin are not levied on owners, but 'upon all general property.' The significance of the distinction is that no matter how the ownership of property is divided, the taxes are levied against the whole property." (Citation omitted.)

Section 70.32(1), STATS., describes the manner in which an assessor values real property:

**(1)** Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

Fair market value or full value of property is defined as: "[t]he amount it will sell for upon arms-length negotiation in the open market, between an owner willing but not obliged to sell, and a buyer willing but not obliged to buy." *Darcel*, 137 Wis. 2d at 628, 405 N.W.2d at 346 (quoted source omitted).

With regard to the issue on appeal, the 1 PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS (MANUAL) provides:

In s. 70.03, Stats., the definitions of real property includes ". . . all fixtures and rights and privileges appertaining thereto." In essence it is these rights and privileges that the assessor is valuing. These rights are called the bundle of rights and consist of use, possession, enjoyment, disposition, exclusion, or the right not to exercise any of these rights.

. . ..

Estates are ownership interests in real estate and can represent all or only a portion of the bundle of rights. The assessor must be aware that even though a property owner may not possess the entire bundle of rights, the value that is being sought is market value as defined in s. 70.03, Stats., and includes **all** rights and privileges. In other words, the assessor will be valuing the entire bundle of rights . . ..

. . ..

In the case of a leasehold estate, the owner transfers part of the bundle of rights to the lessee for the duration of the lease; however, the assessor must still value the property based on all of the rights. The assessment must include the owner's rights (leased fee) and the tenant's rights (leasehold).

MANUAL at 7-1, 7-2. The assessor for the City followed the MANUAL when he assessed the property at $2,540,700.

Although the assessor followed the MANUAL in assessing Continental's property, common law which accurately reflects the state of the law, and the language of § 70.32(1), STATS., not the MANUAL, control. *See Metropolitan Holding Co. v. Board of Review*, 173 Wis. 2d 626, 632-33, 495 N.W.2d 314, 317 (1993). The appli-

cable common law is found in *Darcel* and the subsequent case of *Metropolitan Holding*.[1]

In *Darcel*, the issue before the supreme court was whether a property tax assessment was properly based on market rental income when there was a recent arm's-length sale of the property from which to determine fair market value. *Darcel*, 137 Wis. 2d at 624, 405 N.W.2d at 344. The court held: "[A]ctual rents of arms-length leases must be considered as a factor in determining market value. . . . [A] recent arms-length sale of the property is the best 'information' to arrive at the full tax assessment value of that property, and capitalization of so-called 'market' rent is not the best evidence of value in the presence of such a sale." *Id.* at 640, 405 N.W.2d at 351. Importantly, the court stated that if an encumbrance, such as a long-term lease, would subject all potential buyers to the same decreased use or rent

---

[1] The issue in *Metropolitan Holding Co. v. Board of Review*, 173 Wis. 2d 626, 495 N.W.2d 314 (1993), was whether estimated market rents and expenses or actual income and expenses should be used to arrive at the proper annual income figure. *Id.* at 628, 495 N.W.2d at 315. The housing complex in dispute was encumbered by Department of Housing and Urban Development (HUD) restrictions which controlled, among other things, the maximum amount of rent that Metropolitan could charge. *Id.* at 628-29, 495 N.W.2d at 315. The court stated: "In using estimated market rents and expenses, the city assessor essentially pretended that [the property] was not hindered by the HUD restrictions and valued the property at the amount the property would bring in an arm's-length transaction if Metropolitan were able to charge market rents." *Id.* at 631, 495 N.W.2d at 316-17. The court held that the use of estimated market rents violated § 70.32(1), STATS., because the estimated market rents did not reflect the true market value of the property. *Metropolitan Holding,* 173 Wis. 2d at 631-32, 495 N.W.2d at 317.

of the property and it was entered into at arm's-length, it should be considered to lower the full market price of the property. *Id.* at 636, 405 N.W.2d at 349.

We conclude that the board did not err in reducing the property tax assessment to $1,722,000, which reflects what Continental would receive in a sale of the property based upon the income that was being generated from the lease. Where property is encumbered by a bundle of rights, we must appraise or assess the property at its value using the current value of those bundle of rights. In this case, we cannot speculate as to what the lease rights might bring on the market, but we must accept the rental payments agreed upon under the negotiated lease terms. *See Metropolitan Holding*, 173 Wis. 2d at 631-32, 495 N.W.2d at 317 (where the use of estimated market rents violated § 70.32(1), STATS., because the estimated market rents did not reflect the true market value of the property).

We reject the City's contention that the board of review's decision and the circuit court's subsequent affirmance exempt leasehold interests from assessment. In the present case, the full value of the property, including the leasehold, which in this case is treated as an encumbrance on the property, was properly assessed at what could ordinarily be obtained at private sale. The leasehold is not exempt from assessment, but rather was properly considered when assessing the full market value of the encumbered property. We therefore reject the City's argument that the failure to assess all interest in the property creates

489

a partial tax exemption contrary to the uniformity clause of the Wisconsin Constitution.[2]

The City further argues that even if *Darcel* applies to the present situation, 1991 Wis. Act 39 § 1722, which took effect on January 1, 1992, reversed the decision. The new legislation amended § 70.32(1), STATS., to read:

> In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

The City contends: "By providing that an arm's-length sale of property is not even to be considered unless it conforms to recent sales of comparable property, the legislature has said that a recent arm's-length sale is not necessarily the best information to determine value. The *Darcel* decision has thus been reversed by the amendment of sec. 70.32(1)."

Whether the amendment to § 70.32, STATS., repealed *Darcel* is a question of statutory interpretation which we review de novo. *See K.N.K. v. Buhler*, 139 Wis. 2d 190, 199, 407 N.W.2d 281, 286 (Ct. App. 1987). Because we conclude that § 70.32 is clear and unambiguous, we need not look beyond the language of the statute itself to ascertain its meaning. *See J.A.L. v. State*, 162 Wis. 2d 940, 962, 471 N.W.2d 493, 502 (1991).

---

[2] Article VIII, § 1 of the Wisconsin Constitution requires that the rule of taxation shall be uniform.

We disagree with the City's interpretation of the amendment to § 70.32, STATS. The language upon which *Darcel* relied remains unchanged: "Real property shall be valued . . . from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale." *See* § 70.32. In the present case, there was no recent sale of the property at issue. However, the actual value which would be obtained at an arm's-length sale based on the current value of the leases was the best information to determine value. We conclude that the subsequent legislation did not repeal *Darcel*.

*By the Court.*—Order affirmed.