WALGREEN Co., Plaintiff-Appellant,†

v.

CITY OF MADISON, Defendant-Respondent.

Court of Appeals

*No. 2006AP1859. Submitted on briefs January 23, 2007.*
*—Decided May 17, 2007.*

## 2007 WI App 153

(Also reported in 735 N.W.2d 543.)

† Petition to review granted 9-13-07.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Robert L. Gordon* of *Michael, Best & Friedrich LLP*, Milwaukee; *James H. Gilbert* of *James H. Gilbert Law Group PLLC*, Eden Prairie, Minnesota; and *Robert A. Hill* of *Robert Hill & Associates*, Eden Prairie, Minnesota.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Larry W. O'Brien*, Assistant City Attorney for the City of Madison.

A nonparty brief was filed by *Robert Horowitz* of *Stafford Rosenbaum LLP*, Madison, for the Wisconsin Association of Assessing Officers, the League of Wisconsin Municipalities, the City of Brookfield, the City of Cudahy, the City of Eau Claire, the City of Greenfield, the City of Kenosha, the City of Lake Geneva, the City of Milwaukee, the City of New Berlin, the City of Oshkosh, and the Village of Pleasant Prairie.

Before Lundsten, P.J., Dykman and Higginbotham, JJ.

¶ 1. LUNDSTEN, P.J. Walgreen challenges the City of Madison's assessments for both 2003 and 2004 on two properties leased by the owners to Walgreen for retail space. Walgreen's leases require Walgreen to pay property taxes for both locations. After unsuccessfully challenging the assessments before the Madison Board of Review, Walgreen brought an action in the circuit court under Wis. Stat. § 74.37(3)(d).[1] Walgreen's circuit court challenge was also unsuccessful, and it appeals.

¶ 2. The issues on appeal involve the City assessor's reliance on contract rents that Walgreen was obligated to pay the property owners, or any successor owners, under the leases. According to the City, these locked-in contract rents caused the properties to be more valuable than comparable properties without such lease agreements. Walgreen contends that the City was required to ignore the contract rents and instead value the properties as if Walgreen was paying market rent at the

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

time of the assessments. The parties agree that market rent, estimated as of the time of the assessments, was substantially lower than the contract rents, and reliance on market rent would result in substantially lower assessments. Walgreen makes several arguments, including its assertion of a uniformity clause violation under the State Constitution. We reject each argument and, therefore, affirm the circuit court.

## Background

¶ 3. Walgreen's business plan for expansion calls for it to lease, rather than own, properties where it locates new stores. Walgreen, however, does not look for existing retail space. Walgreen wants all of its new retail operations located in buildings with features not available in the marketplace.

¶ 4. Rather than locate its own building sites and directly finance construction, Walgreen works with developers who identify locations matching Walgreen's specifications. The developers acquire the land, build buildings meeting Walgreen's specifications, and lease the properties to Walgreen long-term. In return, Walgreen agrees to pay monthly rent in a fixed amount calculated to reimburse the developers for land acquisition costs, construction costs, and financing and provide a return on their investment. Walgreen challenges the assessments on two properties that were developed and leased in this manner.

¶ 5. Both properties are located in the City of Madison, one at 2909 East Washington Avenue (2909 East) and the other at 3710 East Washington Avenue (3710 East). The 2909 East location was first leased in 2000 and the 3710 East location was first leased in 1999. Both leases effectively guarantee locked-in rents

625

for 20 years. Any party purchasing one of these properties necessarily acquires all the rights and obligations of the owner, including the right to these guaranteed rents.

¶ 6. The City assessor assessed the properties using an income approach that included reliance on the locked-in rents specified in the leases. Walgreen unsuccessfully challenged the 2003 and 2004 assessments on both properties before the Madison Board of Review. Walgreen then filed an action in circuit court under WIS. STAT. § 74.37(3)(d). The circuit court held a trial.

¶ 7. At trial, the dispute centered on the appropriate assessment method. Walgreen asserted that the assessments should have been based on the properties' fee simple interest value. More specifically, Walgreen argued that the assessments should have been based on several factors, including sales of comparable properties. Walgreen argued that, to the extent the income-producing capacity of the properties is relevant, the City was required to use estimated market rent, not the contract rents. Also, Walgreen asserted that the assessments violated the uniformity clause in the State Constitution. Essentially, Walgreen made the same arguments in the circuit court that we address on appeal.

¶ 8. The City, in contrast, argued that there were no comparable properties because of Walgreen's atypical leasing arrangement and that the income approach was the only appropriate assessment method in light of the available information. Using the income approach here meant determining the net income-producing capacity of the properties in light of the contract rents and then using those net income streams to estimate the amounts an arm's-length buyer would be willing to pay for the properties on the assessment dates. Using 2909 East as an example, the City assessor calculated

the 2003 assessed value by taking the total amount of contract rent for one year, $430,000, and deducting amounts representing annual risk of vacancy and expenses, to arrive at an annual net operating income figure, $387,903, and then applying a capitalization rate, 8.4%—that is, dividing $387,903 by .084—to reach an assessed value of $4,618,000. The assessor selected the capitalization rate based on the rate of return a purchaser would normally get for an investment in such property.

¶ 9.   In contrast, by ignoring the contract rent income, and by using otherwise acceptable methods, a Walgreen expert valued 2909 East for the same year at $1,790,000.

¶ 10.   The circuit court ruled in favor of the City, adopting the City assessor's 2003 and 2004 assessments and expressly or implicitly rejecting all of Walgreen's arguments.[2]

---

[2] More precisely, the circuit court expressly adopted the City assessor's 2003 assessments and declined to entertain Walgreen's challenge to the 2004 assessments. The circuit court concluded that, as to the 2004 assessments, Walgreen failed to comply with procedures in Wis. Stat. § 70.47(7) and was, therefore, barred from challenging the assessments under Wis. Stat. § 74.37(4)(a). Walgreen challenges that conclusion. At the same time, Walgreen's briefing on the propriety of the assessments assumes that we may address both the 2003 and 2004 assessments. Walgreen asks that ·we reverse the circuit court and remand with instructions that the court enter judgment for Walgreen in accordance with the value conclusions of Walgreen's appraiser for both 2003 and 2004. The City urges us to affirm the circuit court's conclusion that Walgreen failed to comply with § 70.47(7) and was therefore barred under § 74.37(4)(a) with respect to the 2004 assessments. But the City does not argue that we may not address both years. Indeed, the City requests that we "affirm the Circuit Court's valuation of

## Discussion

### A. Standard Of Review

¶ 11.   The standards governing our review were recently summarized in *Adams Outdoor Advertising, Ltd. v. City of Madison*, 2006 WI 104, 294 Wis. 2d 441, 717 N.W.2d 803:

> When we review a claim of an excessive tax assessment under § 74.37(3)(d), we review the record made before the circuit court, not the board of review.
>
> The circuit court may make its determination without regard to any determination made at any earlier proceeding, and without giving deference to any determination made at a previous proceeding. This court, like the circuit court, must give presumptive weight to the City's assessment. Wis. Stat. § 70.49(2). However, the assessment is presumed correct only if the challenging party does not present significant contrary evidence.
>
> Failure to make an assessment on the statutory basis is an error of law. Whether the City followed the statute in making its assessment is a question of statutory interpretation that we review de novo.
>
> The circuit court conducted a trial that included expert testimony. Where there is conflicting testimony

2909 East Washington Avenue for 2003 at $4,618,000 and for 2004 at $4,618,000; and the value of 3710 East Washington Avenue for 2003 at $3,860,000 and for 2004 at $3,860,000, all as determined by the City's appraiser." Nothing in the arguments of either party suggests that resolution of the substantive issues regarding the 2003 assessments does not apply equally to the 2004 assessments. Further, it is undisputed that, if we resolve those issues against Walgreen, Walgreen has no other preserved challenge to the 2004 assessments. Under these circumstances, we see no need to address whether Walgreen complied with § 70.47(7).

the fact finder is the ultimate arbiter of credibility. "The weight and credibility to be given to the opinions of expert witnesses is 'uniquely within the province of the fact finder.'" Applying the law to the facts presents a question of law that we review independently of the circuit court.

*Id.*, ¶¶ 24–27 (citations omitted).

### B. Reliance On Contract Rent, Rather Than On Market Rent

¶ 12. Walgreen's challenge to the assessments hinges on its assertion that the City impermissibly relied on the contract rents Walgreen was required to pay the owners, rather than on market rent. As described in the background section, the City assessor used the income approach to value the properties. Boiled down, the assessor used the contract rents guaranteed in the leases to determine the net income-producing capacity of the properties and, in turn, used the information to estimate the amounts an arm's-length buyer would be willing to pay for the properties on the assessment dates. According to Walgreen, the City was instead required to value the properties in accordance with the estimated market rent the properties would have commanded on the assessment dates, that is, rent a hypothetical tenant would pay if it negotiated to lease the properties *after* the land was acquired and buildings built. The parties agree that estimated market rents on the assessment dates are significantly lower than the contract rents.[3]

---

[3] We use the term "market rent" as Walgreen uses it, that is, to describe an estimated amount of rent a hypothetical tenant would pay a hypothetical owner to lease the properties as they were on the assessment dates. This use of "market rent" appears

¶ 13. The City argues that Walgreen's proposed approach does not produce the true value of the properties because it ignores a feature that makes the properties substantially more valuable than otherwise similar properties. Specifically, Walgreen's approach ignores the guaranteed rents that any buyer would obtain. Thus, in the City's view, an accurate assessment of the value of the properties must take into account the contract rents, not estimated market rent, because both an owner and a buyer of the properties as of the assessment dates would consider the contract rents when negotiating an arm's-length sale.

¶ 14. We agree with the City. In the following subsections, we summarize and reject each of Walgreen's specific arguments.[4]

### 1. The Goal Of Real Property Tax Assessment

¶ 15. Walgreen asserts, without citation to authority, that "the basic goal of all real property tax

to be consistent with its normal use by government assessors and case law. *See* THE APPRAISAL OF REAL ESTATE 83 (Appraisal Institute, 12th ed. 2001) (defining "market rent" as rent "a property would probably command in the open market; indicated by the current rents that are either paid or asked for comparable space as of the date of the appraisal"); *Darcel, Inc. v. City of Manitowoc Bd. of Review*, 137 Wis. 2d 623, 405 N.W.2d 344 (1987) (using the term "market rent" throughout as shorthand for the rent the current property owner would receive if it negotiated a new rent amount at the time of the assessment and was not bound by locked-in contract rents).

[4] Our understanding of the issues benefited from an amicus brief submitted in support of the City by the Wisconsin Association of Assessing Officers, the League of Wisconsin Municipalities, the City of Brookfield, the City of Cudahy, the City of Eau Claire, the City of Greenfield, the City of Kenosha, the City of Lake Geneva, the City of Milwaukee, the City of New Berlin, the City of Oshkosh, and the Village of Pleasant Prairie.

assessment [is] to value the fee simple interest in real property." "Fee simple" interest means:

> Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat.

THE APPRAISAL OF REAL ESTATE 69 (Appraisal Institute, 12th ed. 2001). Thus, it is Walgreen's position that we must be guided by the principle that the goal of real property tax assessment is to value property as if it carried with it solely "limitations imposed by the governmental powers" which here, of course, means ignoring the leases and, more specifically, ignoring the contract rents. We find no support for Walgreen's assertion in Wisconsin law or logic.[5]

¶ 16.  Rather, the goal of real property tax assessment, as set forth in Wis. Stat. § 70.32(1), is to assess property based on the "full value which could ordinarily be obtained . . . at private sale."[6] This means that prop-

---

[5] The parties speak in terms of "fee simple interest" and "leased fee interest." Generally, the parties use the term "fee simple interest" to refer to the value of the properties without regard to the leases and the term "leased fee interest" to refer to the value of the properties as affected by the leases, that is, taking into account the locked-in rents. With minor exceptions, we see no need to employ such terms in the remainder of this opinion.

[6] WISCONSIN STAT. § 70.32(1) provides:

> Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value, the assessor shall consider recent arm's-length sales

erty must be assessed at the amount the property would " 'sell for upon arms-length negotiation in the open market, between an owner willing but not obliged to sell, and a buyer willing but not obliged to buy.' " *Darcel, Inc. v. City of Manitowoc Bd. of Review*, 137 Wis. 2d 623, 628, 405 N.W.2d 344 (1987) (citation omitted); *see also Metropolitan Holding Co. v. Board of Review of City of Milwaukee*, 173 Wis. 2d 626, 631, 495 N.W.2d 314 (1993). Furthermore, by statute "real property" includes "rights and privileges appertaining thereto." WIS. STAT. § 70.03. Stated differently, when a property carries with it a "bundle of rights," an assessment must be based on "the property at its value using the current value of those bundle of rights." *See City of West Bend v. Continental IV Fund Ltd. P'ship*, 193 Wis. 2d 481, 487, 489, 535 N.W.2d 24 (Ct. App. 1995); *see also Darcel*, 137 Wis. 2d at 631–32.

¶ 17. Accordingly, we reject Walgreen's assertion that the goal of real property tax assessment is to value property without regard to lease terms, specifically, without regard to contract rents.

### 2. *Whether* Darcel, Metropolitan, *And* West Bend *Apply*

¶ 18. Walgreen argues that the holdings in *Darcel*, *Metropolitan*, and *West Bend* are "explicitly" limited to encumbrances that *reduce* a property's value. Thus, the

of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

argument goes, a long-term lease with locked-in rent amounts may be used to reduce, but not increase, an assessment. We disagree. We read these cases as supporting the principle that, in assessing the "full value" of real property under Wis. Stat. § 70.32, the assessor should consider the actual rents, regardless whether the rents are above or below market rent.

¶ 19.   The property at issue in *Darcel* was a shopping mall in Manitowoc. Some of the mall tenants had long-term leases with locked-in rents below what the mall owner could charge at the time of the assessment. Several months before the assessment, the mall was sold in an arm's-length transaction for $4,100,000. The Manitowoc Board of Review (Manitowoc) recognized that the sale price was an accurate reflection of what a willing buyer would pay in light of the long-term leases that ran with the property, but Manitowoc nonetheless took the position that the sale price did not reflect the "full value" of the mall. Rather than rely on actual lease rents, Manitowoc relied on estimated market rents, and assessed the mall at $5,231,000. *Darcel,* 137 Wis. 2d at 624–25, 627–28.

¶ 20.   The *Darcel* court rejected Manitowoc's reliance on estimated market rents. We acknowledge that, in rejecting reliance on the estimated market rents, the *Darcel* court focused on the fact that the case involved a recent arm's-length sale. The court held that, in such a situation, it was incorrect for the assessor to rely on a method of valuation using estimated market rents because the recent sale was "clearly the best evidence of the 'full value' of the property." *Id.* at 628; *see also id.* at 640. However, the *Darcel* decision also speaks to the proper method of valuation when, as here, no recent arm's-length sale is available and property is subject to a long-term lease with locked-in rents. The court

633

said: "The goal . . . is to ascertain what an investor would pay for the property, *and contract rents, not market rents, are the clearest indicator of what the investor would pay." Id.* at 633 n.7 (emphasis added).

¶ 21. Subsequently, in *Metropolitan* and *West Bend,* the supreme court and this court followed *Darcel* in situations in which property had been assessed, as here, using an income approach when no qualifying recent arm's-length sale had occurred. In both cases, the assessed rental property was bound by rents that were less than market rents. *Metropolitan,* 173 Wis. 2d at 628–29 (subsidized housing project); *West Bend,* 193 Wis. 2d at 484–85 (shopping center). The supreme court in *Metropolitan* and this court in *West Bend* held that assessors must use actual or contract rents because those rents reflect the full value of a property. *Metropolitan,* 173 Wis. 2d at 631–32; *West Bend,* 193 Wis. 2d at 487–90.

¶ 22. Although *Darcel, Metropolitan,* and *West Bend* all involved rents that were lower than market rents, the underlying logic of the cases compels their application to situations involving contract rents that are higher than market rents. As already indicated, *Darcel* states that "[t]he goal . . . is to ascertain what an investor would pay for the property, and contract rents, not market rents, are the clearest indicator of what the investor would pay." *Darcel,* 137 Wis. 2d at 633 n.7. Similarly, we said in *West Bend* that "the actual value which would be obtained at an arm's-length sale based on the current value of the leases was the best information to determine value." *West Bend,* 193 Wis. 2d at 491. This reasoning applies equally to contract rent that is above, rather than below, market rent.

¶ 23. Walgreen's discussion of *Darcel, Metropolitan,* and *West Bend* contains a telling omission.-

Walgreen does not attempt to explain why actual rents that differ from market rents provide a reliable indicator of "full value" only when actual rents are lower than market. We have identified no such explanation and, therefore, reject Walgreen's argument that the holdings in *Darcel*, *Metropolitan*, and *West Bend* are limited to leases that reduce a property's value.

¶ 24.   As we discuss in the next section, there may be situations in which actual rents do not reflect "full value" and, therefore, should not be used for assessment purposes. But no such situation was identified in *Darcel*, *Metropolitan*, or *West Bend* and, as we shall see, Walgreen has not identified such a situation here.

### 3. Whether Darcel Is Distinguishable Because It Involved Rents That Initially Were Market Rents

¶ 25.   Walgreen argues that *Darcel* does not apply here because it involved contract rents that were market rents when the lease agreements were entered into. *See Darcel*, 137 Wis. 2d at 625, 627. In contrast, Walgreen asserts, the rents here have always been higher than market rent.

¶ 26.   The City's response is unsatisfactory. The City contends that the rents Walgreen pays were "market rent" when the leases were signed because, at that time, the rents were negotiated in an open market at arm's length. But Walgreen is not saying that it did not bargain at arm's length and that its rents are not "market" for that reason. Rather, Walgreen is using the term "market rent" as it is generally used in this field—that is, to describe an amount of rent a tenant would normally negotiate for a property, absent the sort of arrangement Walgreen entered into that incorporates reimbursement for development costs into the rent amount. *See* footnote 3, *supra*.

¶ 27. Nonetheless, we reject Walgreen's attempt to distinguish *Darcel*. Here again, Walgreen fails to explain why the factor it identifies—contract rents that were market rents when the lease agreements were entered into—mattered to the result in *Darcel*. We perceive no reason why the fact that the rents Walgreen pays have always been higher than market rent, by itself, should compel the City to ignore those rents when assessing Walgreen's properties.

¶ 28. We stress that we do not hold that, when a lease agreement locks in rent payments long-term, assessments must always be based on the contract rent in the lease, rather than on market rent. Walgreen aptly explains, by way of a hypothetical, why some contract rents may not be reliable for assessment purposes. Walgreen poses the following example. Suppose a parent, confident that no sale will occur during the term of the lease, helps his or her child by entering into a long-term lease providing artificially low locked-in rent. Under these facts, we agree with Walgreen that it does not appear that an assessor should be required to rely on the artificially low rent to value the property. We do not purport to rule on such hypothetical situations here. Still, it would seem that, as a *general* rule, reliance on actual rent, rather than on market rent, makes sense only when the actual rent was arrived at as part of, or in the course of, an arm's-length transaction.

¶ 29. Returning to the facts here, Walgreen's rents are not "market rent" as that term is used in this opinion. But the rents here were set in an arm's-length transaction, and Walgreen has not identified a reason why the actual rents are not useful for purposes of determining "full value."

636

### 4. Walgreen's Reliance On Assessor's Legal Opinion Testimony

¶ 30.   Walgreen complains that one of the circuit court's conclusions—that the properties could be assessed at a higher amount than an identical owner-occupied property with no lease—is directly contradicted by the City assessor's testimony. This argument is meritless.

¶ 31.   Walgreen points to the following brief exchange at trial:

> [Counsel for Walgreen]:   Now is it your opinion that if two properties are otherwise identical and one happens to be leased and one happens to be owner occupied, that they could be assessed differently?
>
> [City Assessor]:   They shouldn't be.
>
> [Counsel for Walgreen]:   Okay. They should be assessed the same?
>
> [City Assessor]:   They shouldn't be assessed differently, yes.

¶ 32.   First, read in context, the City assessor's testimony does not appear to be a blanket statement. Rather, the assessor appears to be assuming that the question asks about a hypothetical simple lease with current market rent, not about the sort of leases Walgreen entered into. Plainly, if the City assessor held the view Walgreen ascribes to her, she would not have assessed Walgreen's properties as she did.

¶ 33.   Second, even if we read the assessor's answers as Walgreen does, her opinion is a legal opinion that did not bind the circuit court. *See Bilda v. Milwau-*

*kee County*, 2006 WI App 159, ¶¶ 47–50, 295 Wis. 2d 673, 722 N.W.2d 116 (circuit court was free to ignore affidavit consisting only of legal conclusions), *review denied*, 2007 WI 16, 298 Wis. 2d 95, 727 N.W.2d 34 (No. 2005AP52).

### 5. *Walgreen's Argument That The Contract Rents Do Not "Relate To The Land"*

¶ 34. It is undisputed that any buyer of the properties here necessarily acquires the right to the rents guaranteed in the long-term leases. Still, Walgreen asserts that the contract rents are not "related to the land" because Walgreen is obligated to pay the rents regardless whether it occupies the property. Walgreen's argument is meritless.

■

¶ 35. It may be true that, from Walgreen's perspective *as a tenant*, its obligations to pay rent do not "run with the land" in the sense that Walgreen's obligations are not tied to occupancy of the properties. But "full value" is determined from the perspective of a buyer and seller. *See Darcel*, 137 Wis. 2d at 628. From this perspective, the contract rents are appended to the land. Indeed, these rents are especially valuable because they are guaranteed even if a Walgreen's store is unsuccessful and Walgreen vacates before the end of the lease.[7]

---

[7] The City argues in the alternative that the leases and the properties are "inextricably intertwined" as that term is used in *ABKA Limited Partnership v. Board of Review of Village of Fontana-On-Geneva Lake*, 231 Wis. 2d 328, 603 N.W.2d 217 (1999). Having concluded that the assessor properly relied on the actual locked-in rents under the *Darcel* line of cases, we decline to address whether the leases here add value that is

### 6. Whether Walgreen's Rents Are "Rent" For Assessment Purposes

¶ 36. Walgreen asserts its contract rents should not be considered because they are "not the equivalent of rent." More specifically, although denoted as "rent" in the lease agreements, Walgreen argues that its leases are "financing instrument[s]" because the "rents" specified in the leases were intended as "reimbursement of the acquisition, development and financing costs and a profit margin for each store." Walgreen points to the undisputed fact that it must make payments regardless whether it occupies the properties. In effect, Walgreen argues that it leases the properties and makes monthly payments to the owners, but pays no rent.

¶ 37. Walgreen puts form over substance. It is undisputed that Walgreen's monthly payments are not arrived at in the same manner as typical rents. But Walgreen fails to explain why this matters. Whether labeled "rent" or something else, the monthly payments are appended to the properties by the lease agreements. And, by statute, "real property" includes "rights and privileges appertaining thereto." WIS. STAT. § 70.03. Thus, the guaranteed payments here, regardless how labeled, directly affect what the properties would sell for in an arm's-length sale.

### 7. Whether The Circuit Court Improperly Ignored Sales Of Allegedly Comparable Properties

¶ 38. Walgreen asserts that the circuit court improperly ignored undisputed expert testimony on sales of comparable properties. We are not persuaded.

"inextricably intertwined with the land." *See ABKA*, 231 Wis. 2d at 336. At the same time, we note that nothing about our holdings here is inconsistent with the analysis used in *ABKA*.

¶ 39.   First, the circuit court was not required to accept the opinion of Walgreen's expert that the properties the expert identified were sufficiently comparable for assessment purposes. And, we do not read the circuit court's statement that it found Walgreen's experts "in general, credible," as a statement that the court accepted all of their opinions. *See Walworth County v. Therese B.,* 2003 WI App 223, ¶ 26, 267 Wis. 2d 310, 671 N.W.2d 377 (circuit court, as finder of fact, is free to decide which expert is more reliable and to accept or reject the testimony of any expert, including accepting only parts of an expert's testimony).

¶ 40.   Second, Walgreen's argument is built on a foundation of sand that we have already washed away. Walgreen assumes that the circuit court was required to ignore Walgreen's atypical rent arrangements and instead look to estimated market rent. As we have explained, that is an erroneous assumption. *See* ¶¶ 15–24, *supra.* Similarly, the circuit court was entitled to ignore Walgreen's allegedly comparable sales for the simple reason that they were not comparable because those sales did not involve properties with comparably lucrative rent arrangements. *See Adams Outdoor Adver.,* 294 Wis. 2d 441, ¶ 53 ("[A]n assessor must have the ability to discount, even disregard, factors that do not really bear on the value of a property.").[8]

---

[8] We understand *Adams Outdoor Advertising, Ltd. v. City of Madison,* 2006 WI 104, 294 Wis. 2d 441, 717 N.W.2d 803, to hold that an assessor errs if he or she simply "reject[s] out of hand" approaches or factors that may, in a reviewing court's view, have real bearing on assessed value. *See id.,* ¶ 55; *cf. id.,* ¶¶ 24–27. Walgreen asserts that the assessor here made just such an error. But Walgreen's briefing does not demonstrate that the assessor

## 8. Compliance With The Wisconsin
Property Assessment Manual

¶ 41. Walgreen contends that the circuit court's decision conflicts with various parts of the Wisconsin Property Assessment Manual. The short answer to this argument is that, if there is a conflict, it does not matter. The manual does not bind the courts.

¶ 42. WISCONSIN STAT. § 70.32(1) directs that real property shall be valued "in the manner specified in the Wisconsin property assessment manual." However, blind adherence to the manual is not required. "[C]ommon law which accurately reflects the state of the law, and the language of § 70.32(1), STATS., not the MANUAL, control." *West Bend*, 193 Wis. 2d at 487 (court declined to apply property assessment manual's direction to include the tenant's rights in the "bundle of rights" to be assessed); *see also Metropolitan*, 173 Wis. 2d at 632–33.

¶ 43. Although the manual does not control, we choose to address two of Walgreen's manual-based arguments.

### a. Whether The Circuit Court Was Inconsistent In Its
Reliance On The Property Assessment Manual

¶ 44. Walgreen contends that the circuit court's analysis is "internally inconsistent" because the court concluded that one provision in the manual was invalid because it conflicted with case law, but nonetheless relied on the manual's "bundle of rights" concept else-

"rejected out of hand" any approach or factor that Walgreen could legitimately rely on as having real bearing on value. Rather, our review of the record indicates only that the City assessor disagreed with the approaches advanced by Walgreen's experts.

where in its analysis. There is, however, no flaw in the circuit court's reasoning. The circuit court's decision reflects what the parties apparently agree is true—that one part of the manual requires that assessments be based on a property's fee simple interest, whereas another part of the manual directs assessors to consider the "bundle of rights."[9] If these two parts of the manual are in conflict, the problem lies in the manual, not in the circuit court's reasoning.

*b. Whether The Property Assessment Manual Requires Use Of Market Rent, Not Contract Rent*

¶ 45.   Walgreen argues that the circuit court's decision and the assessments conflict with the following manual language:

---

[9] Walgreen is referring to the following language in the property assessment manual:

> A full interest (fee simple interest) in real property can be divided into partial interests. These partial interests can be created by rental property leases as well as by other factors. To accurately estimate the market value of the full interest in leased property, both the lessor's and the lessee's interest (the leased fee and leasehold interest) must be included.

1 PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS, at 7–4. The parties and the circuit court seem to agree that this language says that assessments should take into account the lessee's interest in property by subtracting that interest from the valuation of the property to the extent such interest causes the valuation to exceed the property's fee simple interest value. The meaning of this passage is not apparent to us. In any event, if this language is inconsistent with case law, we trust the Department of Revenue will revise it. *See* WIS. STAT. § 73.03(2a) (the Department of Revenue prepares the Wisconsin Property Assessment Manual).

When applying the income approach, *the assessor must use the market rent, not the contract rent,* of the property . . . . Market rent is the rent that a property would receive based on the current, arm's-length rent commanded by similar properties in the marketplace.

1 PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS, at 7–27 (emphasis added). It appears this part of the manual is either inaccurate or incomplete. In its brief, the City does not attempt to reconcile this language with the income approach used by its assessor and adopted by the circuit court. In any event, as discussed in ¶¶ 18–29 in this opinion, an assessor using the income approach should look to contract rent under the proper circumstances. There is no fixed rule that the assessor must always use market rent instead of contract rent.

### 9. Summary

¶ 46. In sum, we conclude that the City assessor and the circuit court correctly relied on Walgreen's contract rents, rather than on market rent, in establishing the properties' assessed values. Stated differently, we agree with the circuit court that the properties were properly assessed at their "full value."

### C. Uniformity Clause

¶ 47. In *State ex rel. Levine v. Board of Review of Village of Fox Point,* 191 Wis. 2d 363, 528 N.W.2d 424 (1995), the supreme court explained: "Article VIII, sec. 1, of the Wisconsin Constitution requires that the method or mode of taxing real property must be applied

uniformly to all classes of property within the tax district." *Id.* at 371 (footnote omitted). This principle is known as the rule of uniformity. *Id.* Under this rule, even if property is assessed at fair market value, there may be a uniformity clause violation if other comparable properties were assessed *significantly below fair market value*. *Id.* at 371–72.

¶ 48.  Walgreen argues that the assessments violate the rule of uniformity because the City assessor admitted at trial that she could not identify a single comparable property with an assessed value remotely close to the Walgreen assessed values. According to Walgreen, comparable property was assessed, on a per square foot basis, at about half the value of the Walgreen properties. Walgreen asserts that, under the uniformity clause, properties with "profitable leases" may not be assessed using a different method than properties with "non-profitable leases, or no leases." Walgreen does not explain further.

¶ 49.  We agree with the circuit court that Walgreen has not established a uniformity clause violation.

¶ 50.  In general, uniformity is served by "requiring assessors to assess real estate at its fair market value, using the 'best information' that the assessor can practicably obtain." *Id.* at 372. Thus, a party asserting a uniformity violation must demonstrate that allegedly comparable property has comparable features affecting fair market value. As we have suggested above, where, as here, a long-term profitable lease is appended to a commercial rental property, the City assessor's reliance on rent specified in the lease produces the fair market value. The properties Walgreen points to are not com-

644

parable for uniformity clause purposes because they do not carry with them similarly profitable long-term leases.

¶ 51. Properly read, the supreme court's uniformity clause discussion in *Darcel* supports the circuit court's decision. The *Darcel* court reasoned:

> If the city taxes property on the basis of the income the assessor theorizes the property might produce rather than the actual rent the property does produce, the principle of uniform taxation would be violated. *Other landowners would be taxed on the basis of what their property will sell for, but the landowner with long-term leases will be taxed on what the assessor believes the land might produce, not what the land will sell for in an arms-length transaction.*

*Darcel*, 137 Wis. 2d at 640 (emphasis added). Consistent with this reasoning, the City assessor relied on contract rent to estimate what the properties "will [if sold] sell for in an arms-length transaction." *Id.*

## Conclusion

¶ 52. For the above reasons, we affirm the circuit court.

*By the Court.*—Judgment affirmed.